FILED
2010 May-21 AM 09:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

ORIGINAL


# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CONSULTAMERICA, INC.; CAREGIVERS OF PENSACOLA, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| MARVIN REX RANKIN, III; EDD BALCH; RANKIN-SHELTON-HUNTER, INC., WATERCOLOR MANAGEMENT, INC., f/k/a RANKIN-SHUTTLEWORTH, INC., f/k/a RANKIN-RIVERS, INC.; SUNBELT GENERAL AGENCY, INC.; BAYPORT CORPORATION, LTD.; WATER TREATMENT INDUSTRY ASSURANCE CO. | ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION FILE NO. _____  JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT

As provided by Fed. R. Civ. P. 8(a), Plaintiffs provide a short and plain statement of the Court's jurisdiction and Plaintiffs' demands for relief. As provided by Fed. R. Civ. P. 9(b), Plaintiffs provide a detailed and specific statement of their claims of fraud against the Defendants.

## NATURE OF ACTION

1.     This is a Racketeer Influenced and Corrupt Organizations (RICO) action brought by the Plaintiffs on behalf of themselves and, ConsultAmerica Cottage Hills, Inc. ("Cottage Hills") and ConsultAmerica East Haven, Inc. ("East

Haven") to address unlawful, fraudulent activities of the Defendants in the sale and management of fictitious polices of insurance for alleged liability coverage for long term health care facilities, commonly referred to as nursing homes, owned and managed by Plaintiffs, Cottage Hills and East Haven. The Defendants' false and fraudulent activities were and continue to be directed against the Plaintiffs and others, additional nursing homes in Alabama and elsewhere. As Defendants' false and fraudulent activities involved the use of the United States mail, as well as facsimile transmissions of communications, as part of a scheme to unlawfully defraud the Plaintiffs and others and to engage in the illegal "laundering" of the proceeds of the fraud, all activities of which affected interstate and foreign commerce, the Plaintiffs state claims for relief under the Federal racketeering statutes, 18 U.S.C. § 1961, et. seq.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 18 U.S.C. § 1964(a) for losses and damages sustained as a result of violations of 18 U.S.C. § 1962, and state law, §§ 6-5-100, 6-5-101 and 6-5-300, *Ala. Code* 1975.

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a), in that some of the Defendants are residents of this judicial

2

district, and some of the events giving rise to this action occurred in this judicial district.

## PARTIES AND ENTITIES

4.     Plaintiff ConsultAmerica, Inc. ("ConsultAmerica"), is a corporation organized and existing under the laws of Alabama, with a principal office in Haleyville, Alabama.

5.     Plaintiff CareGivers of Pensacola, Inc. ("CareGivers"), is a corporation organized and existing under the laws of Alabama, with a principal office in Haleyville, Alabama and authorized to conduct business in Florida.

6.     ConsultAmerica Cottage Hills, Inc. ("Cottage Hill") is a corporation organized and existing under the laws of Alabama with a principal office in Haleyville, Alabama.

7.     ConsultAmerica East Haven, Inc. ("East Haven") is a corporation organized and existing under the laws of Alabama with a principal office in Haleyville, Alabama.

8.     Gene Church is the President and Chief Executive Officer of ConsultAmerica, CareGivers, Cottage Hills and East Haven and an individual who resides in Pensacola, Escambia County, Florida.

9.     Defendant Edward Rex Rankin, III ("Rankin") is an individual who is believed to reside in Decatur, Morgan County, Alabama.

10.     Defendant Edd Balch ("Balch") is an individual who is believed to reside in Decatur, Morgan County, Alabama.

11.     Defendant Rankin-Shelton-Hunter, Inc. ("Rankin-Shelton") is a corporation organized and existing under the laws of Alabama. Rankin-Shelton operates an insurance agency which has a principal office in Decatur, Alabama. Defendants Rankin and Balch are or were employees and principals of Rankin-Shelton.

12.     Defendant Bayport Corporation, Ltd.; a/k/a Bayport Indemnity Co. Ltd. ("Bayport") is believed to be a corporation incorporated under the laws of the Turks and Caicos Islands, British West Indies, which Plaintiffs believe to be owned and controlled by Defendant Rankin.

13.     Defendant WaterColor Management, Inc. ("WaterColor"), formerly known as Rankin-Shuttleworth, Inc., formerly known as Rankin-Rivers, Inc. is an Alabama corporation, controlled by Defendant Rankin, with a principal place of business in Decatur, Alabama.

14.     Defendant Sunbelt General Agency, Inc. ("Sunbelt"), is a corporation organized and existing under the laws of Alabama. Sunbelt operates an insurance premium financing company with a principal place of business located in Montgomery, Alabama.

4

15.    Defendant Water Treatment Industry Assurance Company ("Water Treatment"), is believed to be a company organized by Defendant Rankin under the laws of the Turks and Caicos Islands, British West Indies and a subsidiary of Defendant Bayport.   Defendant Water Treatment is controlled by Defendant Rankin. Defendant Water Treatment on information and belief is a Turks and Caicos licensed insurance company which provides liability insurance for water treatment companies, but is not licensed to sell insurance in the United States.  As an "alien" insurance company, Defendant Water Treatment was not authorized to sell any insurance in the United States, yet through Defendant WaterColor, f/n/a Rankin-Shuttleworth, Defendant Water Treatment, as part of the fraud scheme stated herein, allegedly sold professional liability insurance to Plaintiffs.

16.    "Carol E. Brooks" is on information and belief a fictitious person, purportedly a "representative" and "secretary" of Bayport and a "representative" of "underwriters of Loyd's", as which name was used by the Enterprise to further its objects.   The investigation to date has been unable to identify a real person associated with Defendant Bayport and Defendant Water Treatment by the name "Carol E. Brooks."  Yet, a stamped purported signature of the fictitious "Carol E. Brooks" is affixed to documents of the above listed defendants.  Examples are attached as Exhibits A and B, incorporated herein.

17.    "Lone Star Risk Retention Group, Inc." was a corporate name caused to be reserved in October, 2004 in Texas my Defendant Rankin who from time to time on information and belief has used it to receive repatriated fraud proceeds. "Lone Star Risk Retention Group, Inc." has been represented by Defendant Rankin to be "controlled" by Willowcrest Management Group, LLC, a South Carolina limited liability company, with a principal place of business identified in 2004 as being in Norcross, Georgia.  On information and belief, Willowcrest Management Group, Inc. LLC's members are Bayport Insurance Managers Ltd., believed to be a Turks and Caicos company controlled by Defendant Rankin, and Healthmark Investments, Ltd.

## BACKGROUND

18.    Since September, 1994, Gene Church has been involved in the ownership, operation and management of nursing homes in Alabama and Florida. Church owns and operates ConsultAmerica Cottage Hills in Pleasant Grove, Alabama, ConsultAmerica in Carbon Hill, Alabama, and owns ConsultAmerica East Haven formerly in Birmingham, Alabama collectively ("ConsultAmerica Group").

19.    Beginning in 1994, the ConsultAmerica Group began purchasing its insurance needs, including workers' compensation, general liability, professional liability, and property and business interruption coverage from Rankin-Shelton, a

personal and commercial lines insurance agency located in Decatur, Alabama. Rankin-Shelton was founded January, 1990, by Rankin, Sandy Shelton and Jo Hunter.

20.     Beginning in approximately 1998, due to increased litigation expenses in the long term healthcare market, the cost of insurance for the nursing homes owned and operated by ConsultAmerica Group began to increase.  Between late 1998 and 1999, for example, the premiums paid on a 185 bed facility in Alabama for $1,000,000/$3,000,000.00 general and professional liability coverage, with a $15,000,000.00 umbrella, and a $1,000 deductible, had doubled in price from approximately $80,000 to $160,000 per year.

21.     In 2002, Church purchased a 210 bed nursing home in Pensacola, Florida.   For business reasons, Church incorporated CareGivers, an Alabama corporation, as the entity to own and operate the Pensacola nursing home called Southern Oaks.

22.     At certain times addressed in this civil action, Defendant Balch was employed by Rankin-Shelton and served as insurance agent for the ConsultAmerica Group and CareGivers in their business relationship with Rankin-Shelton.  Presently, Defendant Balch is identified as an owner of Rankin-Shelton.

## THE SCHEME

23.     In the summer of 2000, Defendant Balch advised Church that there were virtually no companies still willing to provide insurance coverage for nursing homes in Alabama.   But, Balch also advised Church that Rankin knew of an "offshore" insurance company that could provide Church with the needed coverage.   Balch advised Church that his companies would no longer be able to maintain a $15,000,000.00 umbrella insurance coverage, and would have to agree to a $75,000.00 deductible for professional liability coverage.   Additionally, the yearly premium would more than double, to $370,000.00.

24.     Balch also advised Church that rather than having to pay the premiums in a lump sum Rankin-Shelton could arrange financing through a premium finance company that required twenty-five percent of the premium as down payment, followed by six equal monthly payments.   Balch informed Church that Rankin-Shelton would arrange for the premium financing through Defendant Sunbelt.   While the overall costs for the "offshore" insurance as described by Balch were more than the ConsultAmerica Group had been paying, the effect on cash flow was less onerous because of the payment terms.   *See* Exhibit C, C-1 and C-2 attached hereto and incorporated herein.

25.     Balch also told Church that that the name of the "offshore" insurance company was Bayport Indemnity, Ltd., ("Bayport Indemnity") which Balch

identified as being located in the Turks and Caicos Islands, British West Indies, *see* Exhibit D attached hereto and incorporated herein. Balch also advised Church that Bayport Indemnity was a wholly owned subsidiary of Bayport, itself a Turks and Caicos Islands, British West Indies corporation.

26.     There was, in fact, no insurance company named Bayport Indemnity, Ltd., incorporated in the Turks and Caicos Islands authorized to sell insurance in Alabama. Bayport Indemnity is a fictitious and fraudulent nominee used by Defendants Rankin, Balch, Rankin-Shelton and others to facilitate the scheme to defraud stated herein. Further, Defendant Bayport does not have a subsidiary identified as Bayport Indemnity.

27.     In 2000, the ConsultAmerica Group began making payments to Defendant Rankin-Rivers for purported insurance coverage from Bayport Indemnity, as marketed by Defendant Rankin-Shelton. In fact, Bayport Indemnity did not sell any "insurance" as its purported binders were false and fraudulent, a copy of one, attached as Exhibit A, is incorporated herein. When a premium came due for the ConsultAmerica Group, Church would cause a check for the premium down payment to be issued and sent by mail from Haleyville, Alabama to Defendants Rankin-Rivers and Rankin-Shelton located in Decatur, Alabama. On information and belief Defendants Rankin-Shelton and Rankin-Rivers caused the checks to be deposited into a bank account in Decatur, Alabama.

28.     After the proceeds of the fraud were deposited into a bank account, on information and belief, portions of the fraud proceeds were periodically transferred, "laundered," to an account at Renasant Bank in the name of Bayport Corporation, Ltd.  The Alabama Secretary of State's records do not reflect that "Bayport Corporation, Ltd." is/was registered to conduct business in Alabama.

29.     The balance of the premiums was financed through Sunbelt, *see* Exhibit E incorporated herein.   The ConsultAmerica Group made periodic payments to Sunbelt by mailing checks from Haleyville, Alabama to Sunbelt in Montgomery, Alabama.   Sunbelt, in turn allegedly paid "Loyds/Rankin-River," "Lloyds/Rankin-Rivers," and "Lloyds/Rankin-Shuttleworth" the balance of premiums allegedly owed by the ConsultAmerica Group and CareGivers to Bayport Indemnity.  Rather than monies actually going to the purported insurance companies ("Loyds," "Lloyds," etc.) Sunbelt's payments went to Rankin controlled Defendant WaterColor, f/n/a Rankin-Rivers and f/n/a Rankin-Shuttleworth allowing Defendant Rankin to convert the monies to his own use.

30.     On information and belief, Sunbelt was required to have verified the existence and legitimacy of the insurers, and within 30 days after the financing agreement was executed, notify the "insurer" of the existence of the premium financing agreement.  On information and belief, Sunbelt knew that "Loyds," and "Lloyds" was a non-existent company and, in fact, no insurance was sold to the

ConsultAmerica Group and CareGivers by Rankin-Shelton.    Further, on information and belief Sunbelt knew that Rankin-Rivers and Rankin-Shuttleworth were not agents of any underwriting syndicate from Lloyd's of London. Accordingly, Sunbelt knew that payments of monies to Rankin-Rivers and Rankin-Shuttleworth as required by § 27-40-15, *Ala. Code* 1975 were payments of proceeds of a scheme to defraud Plaintiffs.

31.    In early 2001, Church was introduced by Balch to Rankin who informed Church that he (Rankin) had been "assigned" by Bayport to "assist" in "handling" claims which may be made against the ConsultAmerica Group.  At this time Defendant Rankin was an employee and owner of Defendant Rankin-Shelton. In the conversation with Church and Balch, Rankin made comments indicating to Church that Rankin was aware of the ConsultAmerica Group purchasing insurance through Rankin-Shelton from Bayport Indemnity, the purported "offshore" insurance company.

32.    In early 2003, CareGivers, which owned and operated Southern Oaks, through Rankin-Shelton purchased what it understood to be insurance from Bayport Indemnity.  In fact, Bayport Indemnity did not sell any "insurance" as its purported binders were false and fraudulent.  Church told Balch about CareGivers need for insurance coverage.  Church also provided Rankin with the information concerning CareGivers need for insurance.  Rankin contacted Church by telephone

11

informing Church that the same "offshore" company (Bayport Indemnity) that the ConsultAmerica Group had used would also be able to provide Southern Oaks with a low limit policy with defense costs inside their limits.   As with the ConsultAmerica Group, CareGivers made payments of premiums in the same manner as described above in paragraph 27.

33.   In addition to the "insurance" coverage for 2001-2005 for the ConsultAmerica Group and CareGivers, Rankin-Shelton through Rankin also sold to the ConsultAmerica Group and CareGivers purported $400,000/$700,000 umbrella "insurance" coverage allegedly also provided by Bayport Indemnity.  The binders were false and fraudulent.  As with the earlier alleged policies, Sunbelt financed the premiums paid for those years.  Premium payments by the Plaintiffs were made using the U.S. mail in the same manner as identified in paragraph 27.

34.   During the period of time identified herein, in the event any legal claim was made against the ConsultAmerica Group or CareGivers, Rankin would immediately enlist an attorney to contact the claimant's attorney and arrange for a mediation of the case, *see* Exhibit F incorporated herein.  The legal claim would be settled so that neither the claimant nor his or her attorney would become aware of the fact that there was actually no insurance coverage.  Once a claim was resolved, the claimant and his or her attorney would be sent a settlement check drawn on the

Bayport account at the Renasant Bank. *See* Exhibit G attached hereto and incorporated herein.

35.     As Rankin-Shelton, Rankin-Rivers, Rankin-Shuttleworth, WaterColor amassed monies from the ConsultAmerica Group and other nursing homes, on information and belief, the monies in the Bayport account and another account in the name of Defendant WaterColor, f/n/a Rankin-Shuttleworth, f/n/a Rankin-Rivers would be wire transferred from Renasant Bank in Alabama to bank accounts in the Turks and Caicos Islands, British West Indies maintained by Defendant Rankin at the Turks and Caicos Banking Company Limited. These bank accounts include ones in the names of Defendant Bayport Corporation, Defendant RSH (Rankin-Shelton-Hunter), Inc.; Defendant Rex Rankin III; and Defendant Water Treatment Industry Assurance.

36.     These offshore bank accounts were used by the racketeering enterprise ("Enterprise") described herein to launder the proceeds of the fraud scheme identified herein, as bank secrecy jurisdiction facilitated the Enterprise's removal of the fraud proceeds assets from the United States to an offshore bank account while concealing the true origin, source, control and ownership of the monies. Furthermore, these accounts were used by the Enterprise to hold fraud proceeds and from time to time repatriate fraud proceeds back to Alabama and elsewhere for investments and operating expenses of the Enterprise. *See* as Exhibit

13

H attached hereto and incorporated herein, copies of portions of these bank statements.

37.     An example of the repatriation of laundered proceeds of fraud may be found in the court file *WaterColor Management, Inc. v. Gooch's Market, LLC* case number CV08-696BEW filed May 8, 2008 in the Circuit Court of Madison County, Alabama and subsequently transferred to the United States District Court for the Northern District of Alabama, styled *WaterColor Management, Inc. v. Gooch's Market, LLC*, et. al. case No. 5:08-cv-00998-CLS (N.D.Ala.).   Therein, pleadings reflect that Regions Bank loaned money to Charles and Patricia Gooch who executed a note.  On October 4, 2007 that note was "assigned" to Defendant Bayport, *see* Exhibit I attached hereto and incorporated herein.

38.     On information and belief, Defendant Bayport paid "laundered" fraud proceeds to Regions for the note assignment.  On April 22, 2008, Defendant Rankin acting for Defendant Bayport "assigned" the note to Defendant WaterColor (Defendant Rankin identified as its president), *see* Exhibit J attached hereto and incorporated herein.  The fictitious "Carol Brooks" authorized Defendant Rankin to act on behalf of Defendant Bayport.  In furtherance of the conspiracy stated herein, Defendant Rankin recently caused this assignment to be filed on February 1, 2010 in the public records of Madison County, Alabama, *see* Exhibit K attached hereto and incorporated herein.  Further, on behalf of the Enterprise and in

14

furtherance of its objects, Defendant WaterColor authorized its attorney to file on March 11, 2010 a "Motion to Approve Execution, Delivery and Recordation of Foreclosure-Deeds and Motion for Final Order," Exhibit L, attached and incorporated herein.

### FIRST CLAIM

39.   Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "38" as though fully set forth at length herein.

40.   In or about the summer of 2000 and continuing until the present, in the Northern District of Alabama and elsewhere the Defendants Rankin, Balch, Rankin-Shelton, Bayport, WaterColor, Sunbelt and Water Treatment, who were employed and associated with the Enterprise, the activities of which affected interstate and foreign commerce, did knowingly conspire, combine, confederate and tacitly agree, one with another and others not identified herein, to conduct and participate, directly and indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of Title 18, United States Code, §§ 1962(c) and (d).

### THE ENTERPRISE

41.   The Enterprise identified herein is an association in fact of the named Defendants Rankin, Balch, Rankin-Shelton, Bayport, WaterColor, Sunbelt and Water Treatment, and others who conducted the affairs of the Enterprise, directly

and indirectly, principally through the Alabama corporate Defendants Rankin-Shelton and WaterColor and the Turks and Caicos Island corporate Defendant Bayport by and through the pattern of racketeering identified herein.

## OBJECTS OF CONSPIRACY

42.   It was an object of the conspiracy to fraudulently represent that Defendant Rankin-Hunter could obtain insurance coverage for nursing homes from an offshore insurer, Bayport Indemnity.

43.   It was further object of the conspiracy to use the United States mail and other forms of communication which affected interstate and foreign commerce to further the goals of the conspiracy; namely to steal money from nursing home operators in Alabama, Florida, North Carolina, and elsewhere.

44.   It was still a further object of the conspiracy to engage in money laundering activities by causing proceeds from the fraudulent insurance scam to be transmitted through financial institutions by wire transferring monies from Decatur, Alabama to Grand Turk, Turks and Caicos, British West Indies all financial transactions affecting interstate and foreign commerce.

45.   It was still a further object of the conspiracy to engage in further money laundering by returning to the United States proceeds of the insurance fraud for purposes of investments and expenditures by and on behalf of Defendant Rankin.

## MANNER AND MEANS

46.   To effect the objects of the conspiracy and to accomplish its objectives the Defendants did conduct directly and indirectly a pattern of racketeering activity in violation of 18 U.S.C. § 1341, relating to mail fraud; §1343, relating to wire fraud and § 1956, relating to the laundering of monetary investments.

## THE PATTERN OF RACKETEERING ACTIVITY

### Mail Fraud

47.   Defendants Rankin, Balch, Rankin-Shelton, Bayport, WaterColor, Sunbelt and Water Treatment, in the Northern District of Alabama and elsewhere, having devised and intending to devise a scheme to defraud Plaintiffs, as described in paragraphs 23-38 above, for the purpose of obtaining monies from the Plaintiffs by means of false and fraudulent pretenses, representations and promises to sell insurance and for the further purpose of executing said scheme and artifice to defraud did on or about the following dates cause to be placed in the United States mail checks representing payments of purported premiums and expenses for the alleged insurance coverage, said checks being delivered and received through the U.S. mail, all in violation of Title 18, United States Code, §§ 1341 and 2(b).

| On or about | Payments | Defendants | Predicate Act No. |
|---|---|---|---|
| 09/05/2000 | $71,687.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 1 |
| 10/12/2000 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 2 |
| 10/12/2000 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 3 |
| 10/12/2000 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 4 |
| 11/05/2000 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 5 |
| 11/05/2000 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 6 |
| 11/05/2000 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 7 |
| 12/05/2000 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 8 |
| 12/05/2000 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 9 |
| 12/05/2000 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 10 |
| 01/05/2001 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 11 |
| 01/05/2001 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 12 |
| 01/05/2001 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 13 |
| 02/05/2001 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 14 |
| 02/05/2001 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 15 |
| 02/05/2001 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 16 |
| 03/12/2001 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 17 |
| 03/12/2001 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 18 |
| 03/12/2001 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton | 19 |

| | | and Bayport | |
|---|---|---|---|
| 09/28/2001 | $98,048.97 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 20 |
| 10/23/2001 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 21 |
| 10/24/2001 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 22 |
| 10/25/2001 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 23 |
| 10/25/2001 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 24 |
| 11/26/2001 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 25 |
| 11/27/2001 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 26 |
| 11/27/2001 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 27 |
| 11/28/2001 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 28 |
| 12/19/2001 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 29 |
| 12/20/2001 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 30 |
| 12/20/2001 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 31 |
| 12/20/2001 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 32 |
| 01/24/2002 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 33 |
| 01/24/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 34 |
| 01/25/2002 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 35 |
| 01/28/2002 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 36 |
| 01/28/2002 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 37 |
| 02/25/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 38 |

| | | | |
|---|---|---|---|
| 02/26/2002 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 39 |
| 02/26/2002 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 40 |
| 02/26/2002 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 41 |
| 02/28/2002 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 42 |
| 03/25/2002 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 43 |
| 03/28/2002 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 44 |
| 03/28/2002 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 45 |
| 03/28/2002 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 46 |
| 10/01/2002 | | Rankin-Shelton, Balch | 47 |
| 10/09/2002 | $94,375:00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 48 |
| 10/24/2002 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 49 |
| 10/24/2002 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 50 |
| 10/25/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 51 |
| 10/25/2002 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 52 |
| 11/25/2002 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 53 |
| 11/25/2002 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 54 |
| 11/25/2002 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 55 |
| 11/26/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 56 |
| 12/20/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 57 |
| 12/23/2002 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 58 |

| | | | |
|---|---|---|---|
| 12/23/2002 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 59 |
| 12/23/2002 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 60 |
| 01/23/2003 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 61 |
| 01/24/2003 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 62 |
| 01/24/2003 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 63 |
| 02/25/2003 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 64 |
| 02/25/2003 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 65 |
| 02/25/2003 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 66 |
| 02/25/2003 | $36,925.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 67 |
| 03/12/2003 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 68 |
| 03/12/2003 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 69 |
| 03/12/2003 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 70 |
| 03/12/2003 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 71 |
| 03/12/2003 | $13,353.02 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 72 |
| 03/12/2003 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 73 |
| 04/10/2003 | $19,146.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 74 |
| 04/28/2003 | $555.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 75 |
| 05/02/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 76 |
| 06/02/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 77 |
| 07/03/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, | 78 |

| | | | |
|---|---|---|---|
| | | Rankin-Shelton and Bayport | |
| 08/04/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 79 |
| 09/03/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 80 |
| 10/12/2005 | $24,050.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 81 |
| 12/06/2005 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 82 |
| 12/14/2005 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 83 |
| 01/17/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 84 |
| 02/10/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 85 |
| 03/09/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 86 |
| 04/21/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 87 |
| 05/18/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 88 |
| 06/30/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 89 |
| 07/18/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 90 |
| 07/24/2006 | $40.00 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 91 |
| 08/15/2006 | $1,500.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 92 |
| 10/27/2006 | $25,974.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 93 |
| 11/27/2006 | $11,968.95 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 94 |
| 12/11/2006 | $12,582.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 95 |
| 01/24/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 96 |
| 05/01/2007 | $519.01 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 97 |

| 05/09/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 98 |
| 06/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 99 |
| 07/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 100 |
| 08/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 101 |
| 09/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 102 |
| 10/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 103 |

## Wire Fraud

48.     Defendants Rankin, Balch, Rankin-Shelton, Bayport, WaterColor, Sunbelt and Water Treatment in the Northern District of Alabama and elsewhere, having devised and intended to devise a scheme to defraud Plaintiffs, as detail in paragraphs 23-38 above, for the purposes of obtaining monies from the Plaintiffs by means of false and fraudulent pretenses, representations and promises, did on the following dates below transmit and cause to be transmitted in interstate and foreign commerce by wire, writings for the purpose of executing the scheme to defraud, as defined above, all in violation of Title 18, United States Code, §§ 1343 and 2.

| Dates | Communication | Defendant | Predicate Act No. |
|---|---|---|---|
| 10/04/2001 | Facsimile | Balch, Rankin-Shelton, Sunbelt and Rankin | 104 |
| 10/03/2002 | Facsimile | Rankin-Shelton, Balch and Rankin | 105 |

| 02/28/2003 | Facsimile | Rankin-Shelton, Rankin, Balch | 106 |
| 09/16/2004 | Facsimile | Rankin-Shelton, Balch and Rankin | 107 |
| 10/12/2005 | Facsimile | WaterColor, Bayport, Rankin and Balch | 108 |
| 03/28/2006 | Facsimile | Water Treatment, Bayport, Rankin and Balch | 109 |
| 06/09/2007 | Facsimile | WaterColor, Rankin and Balch | 110 |
| 07/20/2007 | Facsimile | WaterColor, Rankin, Balch | 111 |
| 02/08/2008 | Money Wire | Water Treatment | 112 |
| 02/15/2008 | Money Wire | Water Treatment, WaterColor, Rankin | 113 |
| 02/22/2008 | Money Wire | Water Treatment, WaterColor, Rankin | 114 |
| 02/29/2008 | Money Wire | Water Treatment, WaterColor, Rankin | 115 |
| 06/19/2008 | ECF Filing | Bayport, Rankin and WaterColor | 116 |
| 03/11/2010 | ECF Filing | WaterColor, Rankin | 117 |

## Money Laundering

49.    Defendants Rankin, Balch, Rankin-Shelton, Bayport, WaterColor, Sunbelt and Water Treatment knowing that the property involved in the financial transactions, as listed below, represented the proceeds of some form of unlawful activity, such proceeds being from the mail and wire frauds described above, a specified unlawful activity, did conduct and attempt to conduct, and did conspire to conduct such financial transactions all of which effected interstate and foreign commerce, knowing that the transactions were designated in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the mail and wire fraud stated herein, all in violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and 1956(h).

| On or about | Payments | Defendant | Predicate Act No. |
|---|---|---|---|
| 09/05/2000 | $71,687.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 118 |
| 10/12/2000 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 119 |
| 10/12/2000 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 120 |
| 10/12/2000 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 121 |
| 11/05/2000 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 122 |
| 11/05/2000 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 123 |
| 11/05/2000 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 124 |
| 12/05/2000 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 125 |
| 12/05/2000 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 126 |
| 12/05/2000 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 127 |
| 01/05/2001 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 128 |
| 01/05/2001 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 129 |
| 01/05/2001 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 130 |
| 02/05/2001 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 131 |
| 02/05/2001 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 132 |
| 02/05/2001 | $16,662.50 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 133 |
| 03/12/2001 | $17,200.00 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 134 |
| 03/12/2001 | $15,856.25 | WaterColor, Rankin, Balch, Rankin-Shelton and Bayport | 135 |
| 03/12/2001 | $16,662.50 | WaterColor, Rankin, Balch, Rankin- | 136 |

25

| | | Shelton and Bayport | |
|---|---|---|---|
| 09/28/2001 | $98,048.97 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 137 |
| 10/23/2001 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 138 |
| 10/24/2001 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 139 |
| 10/25/2001 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 140 |
| 10/25/2001 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 141 |
| 11/26/2001 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 142 |
| 11/27/2001 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 143 |
| 11/27/2001 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 144 |
| 11/28/2001 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 145 |
| 12/19/2001 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 146 |
| 12/20/2001 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 147 |
| 12/20/2001 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 148 |
| 12/20/2001 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 149 |
| 01/24/2002 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 150 |
| 01/24/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 151 |
| 01/25/2002 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 152 |
| 01/28/2002 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 153 |
| 01/28/2002 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 154 |
| 02/25/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 155 |

| 02/26/2002 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 156 |
|---|---|---|---|
| 02/26/2002 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 157 |
| 02/26/2002 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 158 |
| 02/28/2002 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 159 |
| 03/25/2002 | $801.35 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 160 |
| 03/28/2002 | $15,123.58 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 161 |
| 03/28/2002 | $17,243.33 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 162 |
| 03/28/2002 | $16,103.29 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 163 |
| 10/09/2002 | $94,375.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 164 |
| 10/24/2002 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 165 |
| 10/24/2002 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 166 |
| 10/25/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 167 |
| 10/25/2002 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 168 |
| 11/25/2002 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 169 |
| 11/25/2002 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 170 |
| 11/25/2002 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 171 |
| 11/26/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 172 |
| 12/20/2002 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 173 |
| 12/23/2002 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 174 |
| 12/23/2002 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, | 175 |

| | | Rankin-Shelton and Bayport | |
|---|---|---|---|
| 12/23/2002 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 176 |
| 01/23/2003 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 177 |
| 01/24/2003 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 178 |
| 01/24/2003 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 179 |
| 02/25/2003 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 180 |
| 02/25/2003 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 181 |
| 02/25/2003 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 182 |
| 02/25/2003 | $36,925.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 183 |
| 03/12/2003 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 184 |
| 03/12/2003 | $15,516.41 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 185 |
| 03/12/2003 | $16,833.23 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 186 |
| 03/12/2003 | $16,306.77 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 187 |
| 03/12/2003 | $13,353.02 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 188 |
| 03/12/2003 | $265.76 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 189 |
| 04/10/2003 | $19,146.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 190 |
| 04/28/2003 | $555.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 191 |
| 05/02/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 192 |
| 06/02/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 193 |
| 07/03/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 194 |

| 08/04/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 195 |
|---|---|---|---|
| 09/03/2003 | $19,141.20 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 196 |
| 10/12/2005 | $24,050.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 197 |
| 12/06/2005 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 198 |
| 12/14/2005 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 199 |
| 01/17/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 200 |
| 02/10/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 201 |
| 03/09/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 202 |
| 04/21/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 203 |
| 05/18/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 204 |
| 06/30/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 205 |
| 07/18/2006 | $11,082.36 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 206 |
| 07/24/2006 | $40.00 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 207 |
| 08/15/2006 | $1,500.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 208 |
| 10/27/2006 | $25,974.00 | Rankin-Shelton, Rankin, Balch, WaterColor and Bayport | 209 |
| 11/27/2006 | $11,968.95 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 210 |
| 12/11/2006 | $12,582.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 211 |
| 01/24/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 212 |
| 05/01/2007 | $519.01 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 213 |
| 05/09/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, | 214 |

|  |  | Rankin-Shelton and Bayport |  |
|---|---|---|---|
| 06/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 215 |
| 07/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 216 |
| 08/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 217 |
| 09/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 218 |
| 10/01/2007 | $12,567.40 | Sunbelt, Rankin, Balch, WaterColor, Rankin-Shelton and Bayport | 219 |
| 02/08/2008 | $162,500.00 | Water Treatment | 220 |
| 02/15/2008 | $116,570.31 | Water Treatment, WaterColor, Rankin | 221 |
| 02/22/2008 | $60,000.00 | Water Treatment, WaterColor, Rankin | 222 |
| 02/29/2008 | $113,156.16 | Water Treatment, WaterColor, Rankin | 223 |

## DAMAGES

50.    The Plaintiffs, as a direct and proximate cause of the conduct of the Enterprise's affairs, by and through the Defendants' pattern of racketeering as detailed above, suffered damages in excess of one million, five hundred thousand dollars, an amount to be determined by the jury, for which the Defendants may by jointly and severably liable up to threefold, including the cost of this litigation and reasonable attorneys' fees, *see* 18 U.S.C. § 1964(c).

## SECOND CLAIM

## STATE LAW FRAUD

51.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "49" as though fully set forth at length herein.

30

52.     The racketeering activity alleged in paragraphs 1 through 50 of this Complaint also amounts to fraud under Alabama law.  Without restating each and every allegation of the Complaint, Defendants specifically engaged in a fraud upon Plaintiffs, or conspired with one another to engage in a fraud upon Plaintiffs by falsely representing to Plaintiffs that Bayport Indemnity was an authorized insurance company to induce Plaintiffs to pay money to Defendants Rankin-Rivers and Rankin-Shelton in the form of premiums for errors and omissions, property, umbrella and other coverage for Plaintiffs' nursing homes.  *See* Complaint, ¶¶ 47-49, *supra.*

53.     As previously alleged with specificity each Defendant financially benefitted from Defendant Balch and Rankin's false representations regarding Bayport Indemnity, and each Defendant acted to assist in the scheme to maintain the false insuring scheme.

54.     Plaintiffs undoubtedly relied on Defendant Balch and Rankin's false representations that Bayport Indemnity was an authorized insurer because Plaintiffs paid money to Defendants, as alleged in the complaint in detail, in the form of premiums for coverage.

## DAMAGES

55.     Pursuant to § 6-11-1, *Ala. Code* 1975, the Plaintiffs seek damages to be determined by the jury, as to their actual losses, together with punitive damages for the wanton, deceitful and fraudulent conduct of the defendants, as detailed above.

Dated: May 20, 2010.

Respectfully Submitted:

JAMES LEE FORD, P.C.
6111 Peachtree Dunwoody Road
Building G, Suite 100
Atlanta, Georgia 30328
Telephone: 678-281-8750

James L. Ford, Sr.
Georgia Bar No. 268050

MALOY JENKINS PARKER
Twenty-fifth Floor
75 Fourteenth Street
Atlanta, Georgia 30309
404.875.2700, phone
404.875.8757, fax
parker@mjplawyers.com

Wilmer Parker
Georgia Bar No. 563550
Alabama Bar No. ASB-1376-R80W

# Exhibit A

P. O. Box 1132, Decatur, AL  35602
PH: (256) 260-0412 FAX: (256) 355-3070



**Rankin-Shuttleworth, Inc.**

# Fax

| To: | Hunter Carroll | From: | Rex Rankin |
|---|---|---|---|
| Fax: | 205-879-9990 | Pages: | 2 |
| Phone: | | Date: | 07/20/07 |
| Re: | | CC: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

07/20/2007  10:20   2563553070                RANKIN SHUTTLEWORTH                      PAGE  02

# BAYPORT CORPORATION
## BAYPORT INDEMNITY CO. LTD.
### BEATRICE BUTTERFIELD BUILDING
### BRITISH WEST INDIES

**THIS IS A CLAIMS-MADE POLICY. PLEASE READ THE ENTIRE FORM CAREFULLY.**
**LONG TERM CARE FACILITY LIABILITY**
**DECLARATIONS**

These Declarations with Policy Provisions complete this Policy



**POLICY NO:**  BAY-GLPF-314-2                 **RETROACTIVE DATE:**  October 5, 2000

**NAMED INSURED:**   ConsultAmerica, Inc.; Carbon Hill Leasing Co., Inc. d/b/a ConsultAmerica Carbon Hill, Inc.

**MAILING ADDRESS:**   41899 Hwy. 195
Haleyville, AL 35565

**POLICY PERIOD:** From October 5, 2002  to  October 5, 2003 at 12:01 A.M. Standard Time
at your address shown above.

**FORM OF BUSINESS:** ☒ Corporation ☐ Individual ☐ Partnership ☐ Joint Venture ☐ Other:_____

**Business Description:** Long Term Care Facility

**Limits of Insurance**

| | |
|---|---|
| Policy Aggregate Limit (Long Term Care Facility Professional Liability and General Liability Aggregate Limits Combined | $   300,000 |
| Long Term Care Professional Liability | |
| Each Medical Incident | $   100,000 |
| Aggregate Limit | $   300,000 |
| | |
| General Liability | |
| General Aggregate Limit | $   300,000 |
| Each Occurrence Limit | $   100,000 |
| Products-Completed Operations Aggregate Limit | $   300,000 |
| Personal and Advertising Injury Limit | $   100,000 |
| Fire Damage Limit, Any One Fire | $    50,000 |
| Medical Expense Limit, Any One Person | $    10,000 |

**Deductibles**
Long Term Care Facility Professional Liability (Each
Medical Incident Including Loss of Adjustment
Expense)
General Liability (Each Claim Including Loss of
Adjustment Expense)

**Total Advance Premium for this policy:** $46,788.00

**Note:**  Defense costs are inside the limits.  This policy includes defense inside the limit.  Such payments will reduce the limits of liability.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Issued At The Office Of The Company, BWI   October 29, 2002         BY _____

RECEIVED 07-20-'07 10:12  FROM- 2563553070           TO-    stockham pc            P002/002

# Exhibit B

02/28/2003  15:43   2563507214          RSH INSURANCE                    PAGE  05

**ACORD** **CERTIFICATE OF LIABILITY INSURANCE** CSR KF | CAREGIV | DATE (MM/DD/YY) 03/03/03

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| RANKIN-SHELTON-HUNTER, INC. P.O. Box 2927 Decatur AL 35602 Phone: 256-350-7296 | INSURERS AFFORDING COVERAGE |

| INSURED | |
|---|---|
| CareGivers of Pensacola, Inc. DBA Southern Oaks 600 W. Gregory St. Pensacola FL 32501 | INSURER A: Underwriters at Loyd's |
| | INSURER B: |
| | INSURER C: |
| | INSURER D: |
| | INSURER E: |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY  X CLAIMS MADE  OCCUR  X Professional | BINDER | 02/15/03 | 02/15/04 | EACH OCCURRENCE | $ 100000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 50000 |
| | | | | | MED EXP (Any one person) | $ 1000 |
| | | | | | PERSONAL & ADV INJURY | $ 100000 |
| | | | | | GENERAL AGGREGATE | $ 300000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY  PRO-JECT  LOC | | | | PRODUCTS - COMP/OP AGG | $ 300000 |
| | **AUTOMOBILE LIABILITY** ANY AUTO | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | HIRED AUTOS NON-OWNED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **GARAGE LIABILITY** ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN  EA ACC AUTO ONLY:  AGG | $ $ |
| | **EXCESS LIABILITY** OCCUR  CLAIMS MADE | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | DEDUCTIBLE RETENTION  $ | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU- TORY LIMITS  OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
$5,000 Deductible.  Defense Costs Inside Limits;  Additional Insureds:
SouthTrust Bank and Southeastern Real Estate Group of Pensacola, Inc.

| CERTIFICATE HOLDER | Y | ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|---|
| | | SOUTHTR | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL XXXXXXXXXXXXX MAIL  30  DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, XXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXX |
| Southtrust Bank Attn: Specialized Health Care Lending P.O. Box 2554 Birmingham AL 35290 | | | |
| | | | AUTHORIZED REPRESENTATIVE |

ACORD 25-S (7/97)                                                    © ACORD CORPORATION 1988

02/28/2003  15:43  2563507214          RSH INSURANCE                    PAGE 06

## ACORD™  INSURANCE BINDER

CSR KF | DATE 02/28/03

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

| PRODUCER | PHONE (A/C, No, Ext): 256-350-7296 | COMPANY | | BINDER# 4481 | |
|---|---|---|---|---|---|

RANKIN-SHELTON-HUNTER, INC.
P.O. Box 2927
Decatur AL 35602
Edd Balch

COMPANY: Loyd's

| | EFFECTIVE | | | EXPIRATION | | |
|---|---|---|---|---|---|---|
| | DATE | TIME | | DATE | TIME | |
| | 02/15/03 | 12:01 | X AM / PM | 02/15/04 | X 12:01 AM / NOON | |

| CODE: | SUB CODE: |
|---|---|

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:

AGENCY CUSTOMER ID: CAREGIV

INSURED

CareGivers of Pensacola, Inc.
DBA Southern Oaks
41899 Hwy 195
Haleyville AL 35565.7056

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location)

Nursing Homes: 600 W. Gregory St.
Pensacola, FL 32501

## COVERAGES                                                                    LIMITS

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY**   CAUSES OF LOSS | | | | |
| ☐ BASIC   ☐ BROAD   ☐ SPEC | | | | |
| **GENERAL LIABILITY** | | EACH OCCURRENCE | | $100000 |
| X COMMERCIAL GENERAL LIABILITY | | FIRE DAMAGE (Any one fire) | | $50000 |
| X CLAIMS MADE   ☐ OCCUR | | MED EXP (Any one person) | | $1000 |
| X Prof. | | PERSONAL & ADV INJURY | | $100000 |
| | | GENERAL AGGREGATE | | $300000 |
| | RETRO DATE FOR CLAIMS MADE: | PRODUCTS - COMP/OP AGG | | $300000 |
| **AUTOMOBILE LIABILITY** | | COMBINED SINGLE LIMIT | | $ |
| ☐ ANY AUTO | | BODILY INJURY (Per person) | | $ |
| ☐ ALL OWNED AUTOS | | BODILY INJURY (Per accident) | | $ |
| ☐ SCHEDULED AUTOS | | PROPERTY DAMAGE | | $ |
| ☐ HIRED AUTOS | | MEDICAL PAYMENTS | | $ |
| ☐ NON-OWNED AUTOS | | PERSONAL INJURY PROT | | $ |
| | | UNINSURED MOTORIST | | $ |
| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE | ☐ ALL VEHICLES  ☐ SCHEDULED VEHICLES | | | |
| ☐ COLLISION: | | ACTUAL CASH VALUE | | |
| ☐ OTHER THAN COL: | | STATED AMOUNT | | $ |
| | | OTHER | | |
| **GARAGE LIABILITY** | | AUTO ONLY - EA ACCIDENT | | $ |
| ☐ ANY AUTO | | OTHER THAN AUTO ONLY: | | |
| | | EACH ACCIDENT | | $ |
| | | AGGREGATE | | $ |
| **EXCESS LIABILITY** | | EACH OCCURRENCE | | $ |
| ☐ UMBRELLA FORM | | AGGREGATE | | $ |
| ☐ OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | | $ |
| **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | | WC STATUTORY LIMITS | | |
| | | E.L. EACH ACCIDENT | | $ |
| | | E.L. DISEASE - EA EMPLOYEE | | $ |
| | | E.L. DISEASE - POLICY LIMIT | | $ |
| **SPECIAL CONDITIONS/ OTHER COVERAGES** $5,000 Deductible; Defense Costs Inside Limits | | FEES | | $ |
| | | TAXES | | $ |
| | | ESTIMATED TOTAL PREMIUM | | $ |

## NAME & ADDRESS

☐ MORTGAGEE   X ADDITIONAL INSURED
☐ LOSS PAYEE
LOAN #

SOBNBIR
Southtrust Bank
Specialized Healthcare Lending
P.O. Box 2554
Birmingham AL 35290

AUTHORIZED REPRESENTATIVE

ACORD 75-S (1/88)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          © ACORD CORPORATION 1993

02/28/2003   15:43   2563507214                    RSH INSURANCE                    PAGE  07

## ACORD   INSURANCE BINDER

CSR KF     DATE 02/28/03

THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.

| PRODUCER | PHONE (A/C, No, Ext): 256-350-7296 | COMPANY | | BINDER # 4481 | |
|---|---|---|---|---|---|

PRODUCER
RANKIN-SHELTON-HUNTER, INC.
P.O. Box 2927
Decatur AL 35602
Edd Balch

COMPANY
Loyd's

BINDER # 4481

| | DATE EFFECTIVE | TIME | | EXPIRATION DATE | TIME |
|---|---|---|---|---|---|
| | 02/15/03 | 12:01 | X AM / PM | 02/15/04 | X 12:01 AM / NOON |

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:

CODE:                    SUB CODE:

AGENCY CUSTOMER ID: CAREGIV

INSURED
CareGivers of Pensacola, Inc.
DBA Southern Oaks
41899 Hwy 195
Haleyville AL 35565.7056

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (including Location)
Nursing Homes: 600 W. Gregory St.
Pensacola, FL 32501

## COVERAGES                                                    LIMITS

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY** CAUSES OF LOSS  BASIC  BROAD  SPEC | | | | |
| **GENERAL LIABILITY** | | | | |
| X COMMERCIAL GENERAL LIABILITY | | EACH OCCURRENCE | | $100000 |
| X CLAIMS MADE  OCCUR | | FIRE DAMAGE (Any one fire) | | $50000 |
| X Prof. | | MED EXP (Any one person) | | $1000 |
| | | PERSONAL & ADV INJURY | | $100000 |
| | RETRO DATE FOR CLAIMS MADE: | GENERAL AGGREGATE | | $300000 |
| **AUTOMOBILE LIABILITY** | | PRODUCTS - COMP/OP AGG | | $300000 |
| ANY AUTO | | COMBINED SINGLE LIMIT | | $ |
| ALL OWNED AUTOS | | BODILY INJURY (Per person) | | $ |
| SCHEDULED AUTOS | | BODILY INJURY (Per accident) | | $ |
| HIRED AUTOS | | PROPERTY DAMAGE | | $ |
| NON-OWNED AUTOS | | MEDICAL PAYMENTS | | $ |
| | | PERSONAL INJURY PROT | | $ |
| | | UNINSURED MOTORIST | | $ |
| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE  ALL VEHICLES  SCHEDULED VEHICLES | | ACTUAL CASH VALUE | | $ |
| COLLISION | | STATED AMOUNT | | $ |
| OTHER THAN COL: | | OTHER | | $ |
| **GARAGE LIABILITY** | | AUTO ONLY - EA ACCIDENT | | $ |
| ANY AUTO | | OTHER THAN AUTO ONLY: | | |
| | | EACH ACCIDENT | | $ |
| | | AGGREGATE | | $ |
| **EXCESS LIABILITY** | | EACH OCCURRENCE | | $ |
| UMBRELLA FORM | | AGGREGATE | | $ |
| OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | | $ |
| | | WC STATUTORY LIMITS | | |
| WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY | | E.L. EACH ACCIDENT | | $ |
| | | E.L. DISEASE - EA EMPLOYEE | | $ |
| | | E.L. DISEASE - POLICY LIMIT | | $ |
| **SPECIAL CONDITIONS/ OTHER COVERAGES** $5,000 Deductible; Defense Costs Inside Limits | | FEES | | $ |
| | | TAXES | | $ |
| | | ESTIMATED TOTAL PREMIUM | | $ |

## NAME & ADDRESS

| | MORTGAGEE   LOSS PAYEE | X ADDITIONAL INSURED |
|---|---|---|

Southeastern Real Estate Group
of Pensacola, Inc.
41899 Hwy 195
Haleyville AL 35565-7056

LOAN #

AUTHORIZED REPRESENTATIVE

ACORD 75-S (1/98)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          © ACORD CORPORATION 1993

10/12/2005   11:06   2054868505          CONSULTAMERICA               PAGE  03

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY)
10/05/05

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

Rankin-Shuttleworth
P.O. Box 1132
Decatur, Alabama 35602

| INSURED | INSURERS AFFORDING COVERAGE | NAIC# |
|---|---|---|
| ConsultAmerica, Inc. dba Cottage Hill | INSURER A: Bayport Indemnity Ins. Co. | |
| 41899 Highway 195 | INSURER B: | |
| Haleyville, Alabama 35565-7056 | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| | | GENERAL LIABILITY | | | | EACH OCCURRENCE | $ |
| | | ☐ COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | ☐ CLAIMS MADE ☐ OCCUR | | | | MED EXP (Any one person) | $ |
| | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | GENERAL AGGREGATE | $ |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ |
| | | AUTOMOBILE LIABILITY | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ☐ ANY AUTO | | | | | |
| | | ☐ ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | ☐ SCHEDULED AUTOS | | | | | |
| | | ☐ HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | ☐ NON-OWNED AUTOS | | | | | |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ☐ ANY AUTO | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ |
| A | | EXCESS/UMBRELLA LIABILITY | BAY1946-1 | 10/05/05 | 10/05/06 | EACH OCCURRENCE | $ 400,000 |
| | | ☐ OCCUR ☑ CLAIMS MADE | | | | AGGREGATE | $ 700,000 |
| | | Professional | | | | | |
| | | ☐ DEDUCTIBLE ☐ RETENTION $ 0 | | | | | |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | OTHER | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

Excess General Liability and Professional of 100,000/300,000 making a total of
Cottage Hill Ln # 101071742                        $500,000/$1,000,000

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| GMAC Commercial Corporation   LN # 101071745 P.O. Box 1687 Horsham, PA 19044-6687 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)                                        © ACORD CORPORATION 1988

10/12/2005  11:06    2054868505              CONSULTAMERICA                    PAGE  05

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY)
10/05/05

**PRODUCER**
Rankin-Shuttleworth
P.O. Box 1132
Decatur, Alabama 35602

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURERS AFFORDING COVERAGE**  NAIC#

**INSURED**
ConsultAmerica, Inc. dba Health
& Rehabilitation.
41899 Highway 195
Haleyville, Alabama

| INSURER A: Bayport Indemnity Ins  Co. | |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| | | **GENERAL LIABILITY** | | | | EACH OCCURRENCE | $ |
| | | ☐ COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ |
| | | ☐ CLAIMS MADE ☐ OCCUR | | | | MED EXP (Any one person) | $ |
| | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | GENERAL AGGREGATE | $ |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ |
| | | **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ☐ ANY AUTO | | | | | |
| | | ☐ ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | ☐ SCHEDULED AUTOS | | | | | |
| | | ☐ HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | ☐ NON-OWNED AUTOS | | | | | |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ☐ ANY AUTO | | | | OTHER THAN EA ACC / AUTO ONLY: AGG | $ |
| A | | **EXCESS/UMBRELLA LIABILITY** ☐ OCCUR ☒ CLAIMS MADE Professional ☐ DEDUCTIBLE ☐ RETENTION $ 0 | BAY 1948-1 | 10/05/05 | 10/05/06 | EACH OCCURRENCE | $400,000 |
| | | | | | | AGGREGATE | $700,000 |
| | | | | | | | $ |
| | | | | | | | $ |
| | | **WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | ☐ WC STAT- UTORY LIMITS ☐ OTH- ER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | **OTHER** | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS**

Excess General Liability and Professional over Primary of 100,000/300,000 making a total of
Health & Rehabilitation  Ln#101071740                          500,000/1,000,000

**CERTIFICATE HOLDER**

GMAC Commercial Corporation  Ln #101071740
P.O. Box 1687
Horsham, PA 19044-6687

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE**

ACORD 25 (2001/08)                                             © ACORD CORPORATION 1988

03/28/2006  08:23  2563553070  RANKIN SHUTTLEWORTH  PAGE  01

| ACORD™ | CERTIFICATE OF LIABILITY INSURANCE | | DATE (MM/DD/YY) 03/28/2006 |
|---|---|---|---|

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| WATER TREATMENT INDUSTRY ASSURANCE CO. C/O RANKIN-SHUTTLEWORTH, INC. P. O. BOX 1132 DECATUR, AL 35602-1132 PH: 256-260-0412 FAX: 256-355-3070 | | |

| | INSURERS AFFORDING COVERAGE | NAIC# |
|---|---|---|
| INSURED CAREGIVERS OF PENSACOLA, INC. DBA SOUTHERN OAKS 600 W. GREGORY STREET PENSACOLA, FL 32501 | INSURER A: UNDERWRITERS AT LOYD'S | |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY | RS104B-01 | 02/15/06 | 02/16/07 | EACH OCCURRENCE | $ 100000 |
| | X | COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50000 |
| | | X CLAIMS MADE ☐ OCCUR | | | | MED EXP (Any one person) | $ 1000 |
| | X | PROFESSIONAL LIAB | | | | PERSONAL & ADV INJURY | $ 100000 |
| | | | | | | GENERAL AGGREGATE | $ 300000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY ☐ PRO-JECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ 300000 |
| | | AUTOMOBILE LIABILITY ☐ ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY ☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ $ |
| | | EXCESS/UMBRELLA LIABILITY ☐ OCCUR ☐ CLAIMS MADE | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | | ☐ DEDUCTIBLE ☐ RETENTION $ | | | | | $ $ |
| | | WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
$5,000 DEDUCTIBLE, DEFENSE COSTS INSIDE LIMITS.

| CERTIFICATE HOLDER  14842 | CANCELLATION |
|---|---|
| AGENCY FOR HEALTH CARE ADMINISTRATION LONG TERM CARE UNIT, MS33 2727 MAHAN DRIVE TALLAHASSEE, FL 32308 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  10  DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| | AUTHORIZED REPRESENTATIVE    *R. Brooks*    CAROL E. BROOKS |

ACORD 25 (2001/08)  © ACORD CORPORATION 1988

# Exhibit C

# Rankin — Shelton — Hunter

Rex Rankin, III
Sandy Shelton
Jo Hunter
Edd Balch

October 1, 2002

Attn: Susan
Consult America, Inc. et al
41899 Hwy 195
Haleyville, AL 35565-7056

RE: Commercial Insurance

Dear Susan:

Per our conversation a few minutes ago, please find enclosed our invoice for the property insurance renewal. Please note we have set this premium up into three equal monthly installments, due October, November and December. After you make the December installment, there will be no other payment on the property until next year.

Also, enclosed please find the invoice for the deposit premium on the liability/malpractice insurance. This premium is being financed with Sunbelt General Agency the same as last year. After the initial down payment, there will be six monthly installments as indicated on the agreement. Please have the premium finance agreement signed and returned with the down payment check to our office.

Susan, I discussed these renewals with Gene in Birmingham yesterday, however, if you have any questions, please feel free to give us a call.

Yours very sincerely,

Edd Balch
RANKIN-SHELTON-HUNTER & BALCH

BB/kf

enclosures

Post Office Box 2927
Decatur, Alabama 35602

706 6th Avenue, S.E.
Building
Decatur, Alabama 35601

Phone: (256) 350-7286
Fax: (256) 350-7214

**RANKIN-SHELTON-HUNTER, INC.**

P.O. Box 2927
Decatur, AL 35602
Phone : 256-350-7296

| INVOICE # | | 19687 | Page 1 |
|---|---|---|---|
| ACCOUNT NO. | OP | DATE | |
| CONSAME | KF | 10/01/02 | |
| BALANCE DUE ON | | | |
| 10/05/02 | | | |

**ConsultAmerica, Inc. etal**
Gene Church
41899 Hwy 195
Haleyville, AL 35565-7056

| Itm # | Eff Date | Trn | Type | Description | | Amount |
|---|---|---|---|---|---|---|
| 228774 | 10/05/02 | MEM | GL | Down Pmt-Gen. Liab./Prof. | $ | 94,375.00 |
| | | | | Invoice Balance: | $ | 94,375.00 |

*Pd 11/3/02*
*$ 94,375.00*
*Ck# 5524*

**Exhibit C-1**

09/16/2004   08:17   000000                    RSH                        PAGE  01

FAX To:  DANNY Bomberg @ 334-242-0547

From: Edd Balch

## Consultamerica, Inc.
### 2001/02 Premium Breakdown by Facility

|  | Carbon Hill | East Haven | Cottage Hills | Office | Total |
|---|---|---|---|---|---|
| Property | $  6,443.00 | $   8,422.00 | $ 13,498.00 | $2,725.00 | 31,088 |
| Gen Liab | 16,457.00 | 17,294.00 | 17,852.00 | 3,475.00 | 55,078. |
| Professional | 93,259.00 | 98,001.00 | 101,162.00 | -0- | 292,422 |
| Boiler & Mach | 535.97 | 535.97 | 535.97 | Include. | 1,607.91 |
| TOTAL | $116,694.97 | $124,252.97 | $133,047.97 | $6,200.00 | |
| | | | | | |
| Down Pay: | $ 29,173.74 | $ 31,063.24 | $ 33,261.99 | $1,550.00 | |
| Monthly: (6 Installments) | $ 15,123.58 | $ 16,103.29 | $ 17,243.33 | $  801.35 | |

# Exhibit C-2

10/03/2002   10:35   2563507214                    RSH INC                        PAGE  02/02

**Consultamerica, Inc.**
2002/03 Premium Breakdown by Facility

|  | Carbon Hill | East Haven | Cottage Hills | Office |
|---|---|---|---|---|
| Property | $ 5,198.00 | $ 7,186.00 | $ 12,321.00 | $2,569.00 |
| Syst. Breakdwn | 828.50 | 828.50 | 828.50 | 828.50 |
| Gen Liab & Professional | 119,745.00 | 125,833.00 | 129,892.00 | 2,030.00 |
| TOTAL | $125,771.50 | $133,847.50 | $143,041.50 | $5,427.50 |

Property & Systems Breakdown Payable in 3 Equal Monthly Installments by Location as Follows:

|  | Carbon Hill | East Haven | Cottage Hills | Office |
|---|---|---|---|---|
|  | $2,008.83 | $2,671.50 | $4,383.17 | $1,132.50 |

Liability Coverages Financed With Sunbelt as follows:

|  | Carbon Hill | East Haven | Cottage Hills | Office |
|---|---|---|---|---|
| Down Pay | $29,935.25 | $31,458.25 | $32,473.00 | $ 507.50 |
| Monthly (6 Installments) | $15,516.41 | $16,306.77 | $16,833.23 | $ 265.76 |

# Exhibit D

**ACORD** **CERTIFICATE OF LIABILITY INSURANCE** CSR KF CAREGIV | DATE (MM/DD/YY) 01/23/03

| PRODUCER | |
|---|---|
| RANKIN-SHELTON-HUNTER, INC. P.O. Box 2927 Decatur AL 35602 Phone: 256-350-7296 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

| | INSURERS AFFORDING COVERAGE |
|---|---|

| INSURED | |
|---|---|
| CareGivers of Pensacola, Inc. DBA Southern Oaks 600 W. Gregory St. Pensacola FL 32501 | INSURER A: Bayport Ins Corp DBA HC Ins Co |
| | INSURER B: |
| | INSURER C: |
| | INSURER D: |
| | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A X | GENERAL LIABILITY X COMMERCIAL GENERAL LIABILITY X CLAIMS MADE OCCUR | BINDER | 02/01/03 | 02/01/04 | EACH OCCURRENCE | $ 100000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 50000 |
| | | | | | MED EXP (Any one person) | $ 1000 |
| | | | | | PERSONAL & ADV INJURY | $ 100000 |
| | | | | | GENERAL AGGREGATE | $ 300000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY PRO-JECT LOC | | | | PRODUCTS - COMP/OP AGG | $ 300000 |
| | AUTOMOBILE LIABILITY ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS HIRED AUTOS NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY: EA ACC | $ |
| | | | | | AGG | $ |
| | EXCESS LIABILITY OCCUR CLAIMS MADE DEDUCTIBLE RETENTION | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | WC STATU- TORY LIMITS OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
$5,000 Deductible.  Defense Costs Inside Limits

| CERTIFICATE HOLDER | N ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|
| | AHCA000 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| Agency for Health Care Administration Long term Care Unit, MS33 2727 Mahan Drive Tallahassee FL 32308 | | AUTHORIZED REPRESENTATIVE Edd Balch |

ACORD 25-S (7/97) | ©ACORD CORPORATION 1988

# Exhibit E

18/04/2001  14:88  25635872  RSH  INC  PAGE  81/81

# SUNBELT GENERAL AGENCY, INC.
### P.O. BOX 231114  ·  MONTGOMERY, ALABAMA 36123-1114

Attn: Susan

## INSURANCE PREMIUM FINANCE AGREEMENT
### INSURED: READ BEFORE SIGNING

AGREEMENT, made, executed and delivered this _____ day of _____ between

Name ConsultAmerica, Inc. et al   HOME PHONE ( )
**(PRINT NAME EXACTLY AS IT APPEARS IN THE POLICY DECLARATIONS)**

WORK PHONE (205) 486-2558

MAILING ADDRESS  41899 Hwy 195   CITY Haleyville   STATE AL   ZIP 35565-705

SOCIAL SECURITY NUMBER OR TAX IDENTIFICATION NUMBER  63-1123820

hereinafter referred to as Insured, and SUNBELT GENERAL AGENCY, INC., an Alabama corporation, hereinafter referred to as Sunbelt, for the financing of the balance of the premiums on the following policies of personal/consumer insurance:

## POLICIES OF PERSONAL/CONSUMER INSURANCE TO BE FINANCED

| EFFECTIVE DATE | EXPIRATION DATE | NAME AND EXACT ADDRESS OF INSURING COMPANY FOR NOTICE (INCLUDE GENERAL AGENCY AND COMPANY IF BROKERED) | TYPE OF COVERAGE | POLICY NUMBER | PREMIUM |
|---|---|---|---|---|---|
| 0/5/01 | 10/5/02 | Lloyds/Rankin-Rivers | GL/Prof | | 347,500.00 |
| 0/5/01 | 10/5/02 | Hartford Steam Boiler | Equip Brkdn | FBB2245926 | 1,607.91 |
| 0/5/01 | 10/5/02 | GMC Insurance Companies | Property | 2X3760402 | 31,088.00 |

| TOTAL CASH PRICE (Total Premium, including your Down payment of 95,048.97 | AMOUNT FINANCED The amount of credit provided to you or on your behalf | + FINANCE CHARGE The dollar amount the credit will cost you | = TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate |
|---|---|---|---|---|
| $ 380,195.91 | $ 285,146.94 | $ 10,482.36 | $ 295,629.30 | % 12.5 |

### YOUR PAYMENT SCHEDULE WILL BE AS FOLLOWS:

| AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | WHEN FIRST PAYMENT IS DUE | WHEN SUBSEQUENT PAYMENTS ARE DUE |
|---|---|---|---|
| $ 49,271.55 | 6 | 11/5/01 | 5th |

ATTENTION!!! Attach form #L-001 if there are any lienholders, mortgages, and/or certificate holders.

Itemization of Amount Financed: One hundred percent of the Amount Financed will be paid to the Insuring Company issuing the policy that is the subject of this Premium Finance Agreement, as that Company is listed above.

Repayment of Loan: For and in consideration of Sunbelt's extension of credit to the Insured, and its payment of the premiums listed on this Agreement to the insurance companies, their brokers or agents as Insured's behalf and subject to the terms listed herein, on both the front and back sides of this Agreement, Insured promises to pay Sunbelt, at the address listed at the top of this agreement or as otherwise directed by Sunbelt, the total of payments according to the payment schedule listed above.

Security: The Insured hereby assigns to Sunbelt, and grants Sunbelt a security interest in the return of the total amount payable under this Agreement and all gross unearned premiums in said dividends which may become payable under the listed policy of insurance, as well as any loss payments that may reduce the unearned premiums (subject to any mortgage, loss payee interest). Insured further agrees that Sunbelt may retain any funds that an

The insurance carrier issuing the listed policy of insurance does not require to maintain the Insured's policy in force.

Prepayment: It is agreed that Insured has the right to prepay the total outstanding Amount Financed owed to Sunbelt at any time. If Insured pays the Amount Financed to Sunbelt before it is due, moreover, Sunbelt agrees to refund to Insured the unearned Finance Charge (as determined by using the Rule of 78's, subject to a nonrefundable charge of $15.00, although no refund of less than one dollar ($1.00) will be made.

Late Charge: If a payment is delinquent for five (5) or more days, the Insured agrees to pay to Sunbelt a Late Charge amounting to 5 per centum (5%) of the delinquent amount, or one dollar and fifty cents ($1.50), whichever amount is greater, but subject to a maximum of five dollars ($5.00).

Cancellation Charge: If a payment is delinquent for fifteen (15) or more days, and if said delinquency results in cancellation of the listed policy of insurance, the Insured agrees to pay to Sunbelt a Cancellation Charge of five dollars ($5.00) in the case of consumer insurance premium finance and $15.00 in the case of commercial insurance premium finance.

Contract Reference: See the remainder of this document for information about nonpayment, default, acceleration of maturity, and prepayment terms.

NOTICE TO INSURED: (1) Read both sides of this agreement before signing — both sides contain important terms of this agreement, including a provision requiring arbitration of disputes arising hereunder and a corresponding waiver of rights to trial by jury. (2) Do not sign this agreement if it contains blank spaces (just see "Policy Not Yet Issued" on the reverse side). (3) You are entitled to a copy of this agreement at the time you sign it. (4) Keep your copy of this agreement to protect your legal rights. (5) This agreement is not only binding upon SUNBELT until and only accepted (see "ACCEPTANCE" on the reverse side). By signing this agreement, Insured agrees to all terms and conditions listed herein on both sides of this agreement, and acknowledges that Insured has received a true and complete copy thereof.

The undersigned broker understands and agrees that the provisions on the reverse side hereof are incorporated herein by reference as a part of this agreement.

BROKER SIGNATURE _____ (SEAL)

DATE 10-1-01   BROKER NO.:

AGENCY NAME  Rankin-Shelton-Hunter, Inc.

TELEPHONE NUMBER (256 ) 350-7296

AGENCY'S MAILING ADDRESS:  P.O. Box 2927

CITY  Decatur   STATE AL   ZIP 35602

INSURED _____ (SEAL)  DATE 9/25/01

INSURED _____ (SEAL)  DATE

H 85.

# SUNBELT GENERAL AGENCY, INC.
P.O. BOX 231114 • MONTGOMERY, ALABAMA 36123-1114

## INSURANCE PREMIUM FINANCE AGREEMENT
### INSURED: *READ BEFORE SIGNING*

THIS AGREEMENT, made, executed and delivered this __1st__ day of __October__, __2002__ between

NAME __ConsultAmerica, Inc. et al__                    HOME PHONE ( )
(PRINT NAME EXACTLY AS IT APPEARS IN THE POLICY DECLARATIONS)                    WORK PHONE ( 205 ) 486-2558

MAILING ADDRESS __41899 Hwy 195__        CITY __Haleyville__    STATE __AL__  ZIP __35565-7056__

SOCIAL SECURITY NUMBER OR TAX IDENTIFICATION NUMBER __63-1123870__

hereinafter referred to as Insured, and SUNBELT GENERAL AGENCY, INC., an Alabama corporation, hereinafter referred to as Sunbelt, for the financing of the balance of the premiums on the following policies of personal/consumer insurance:

### POLICIES OF PERSONAL/CONSUMER INSURANCE TO BE FINANCED

| EFFECTIVE DATE | EXPIRATION DATE | NAME AND EXACT ADDRESS OF INSURING COMPANY FOR NOTICE (INCLUDE GENERAL AGENCY AND COMPANY, IF BROKERED) | TYPE OF COVERAGE | POLICY NUMBER | PREMIUM |
|---|---|---|---|---|---|
| 10/5/02 | 10/5/03 | Lloyds (Rankin-Rivers) | GL/Prbf | | 377,500 |
| | | | | | |

| ↓ TOTAL CASH PRICE (Total Premium) including your Down Payment of $94,375.00 | = AMOUNT FINANCED The amount of credit provided to you or on your behalf | + FINANCE CHARGE The dollar amount the credit will cost you | = TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate |
|---|---|---|---|---|
| $ 377,500 | $ 283,125 | + $ 10,408.02 | = $ 293,533.02 | % 12.5% |

### YOUR PAYMENT SCHEDULE WILL BE AS FOLLOWS:

| AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | WHEN FIRST PAYMENT IS DUE | WHEN SUBSEQUENT PAYMENTS ARE DUE |
|---|---|---|---|
| $ 48,922.17 | 6 | 11/5/02 | 5th |

**ATTENTION!!!** Attach form #L-001 if there are any lienholders, mortgages, and/or certificate holders.

**Itemization of Amount Financed:** One hundred percent of the Amount Financed will be paid to the Insuring Company issuing the policy that is the subject of this Premium Finance Agreement, as that Company is listed above.

**Repayment of Loan:** For and in consideration of Sunbelt's extension of credit to the Insured and its payment of the premiums listed on this Agreement to the insurance company, their brokers or agents on Insured's behalf and subject to the terms listed herein on both the front and back sides of this Agreement, Insured promises to pay Sunbelt, at the address listed at the top of this Agreement or as otherwise directed by Sunbelt, the total of payments according to the payment schedule listed above.

**Security:** The Insured hereby assigns to Sunbelt, and grants Sunbelt a security interest to the extent of the total amount payable under this Agreement in, any and all gross unearned premiums in and dividends which may become payable under the listed policy of insurance, as well as any loss payments that may reduce the unearned premiums (subject to any mortgage or loss payee interests). Insured further agrees that Sunbelt may retain any funds that an

**NOTICE TO INSURED:** (1) Read both sides of this agreement before signing it, both sides contain important terms of this agreement, including a provision requiring arbitration of all disputes arising hereunder and a corresponding waiver of rights to a jury. (2) Do not sign this agreement if it contains blank spaces (but see "Policy Not Issued" on the reverse side). (3) You are entitled to a copy of this agreement at the time you sign it. (4) Keep your copy of the agreement to protect your legal rights. (5) This agreement is not legally binding upon SUNBELT until duly accepted (see "ACCEPTANCE" on the reverse side).

By signing this Agreement, Insured agrees to all terms and conditions listed herein on both sides of this agreement, and acknowledges that Insured has received a true and complete copy thereof.

INSURED: _____ DATE: _____ (SEAL)

INSURED: _____ DATE: _____ (SEAL)

insurance carrier issuing the listed policy of insurance does not require to maintain the Insured's policy in force.

**Prepayment:** It is agreed that Insured has the right to prepay the total outstanding Amount Financed owed to Sunbelt at any time. If Insured pays the Amount Financed to Sunbelt before it is due, moreover, Sunbelt agrees to refund to Insured the unearned Finance Charge (as determined by using the Rule of 78s), subject to a nonrefundable charge of $15.00, although no refund of less than one dollar ($1.00) will be made.

**Late Charge:** If a payment is delinquent for five (5) or more days, the Insured agrees to pay to Sunbelt a Late Charge amounting to 5 per centum (5%) of the delinquent amount, or one dollar and fifty cents ($1.50), whichever amount is greater, but subject to a maximum of five dollars ($5.00).

**Cancellation Charge:** If a payment is delinquent for fifteen (15) or more days, and if said delinquency results in cancellation of the listed policy of insurance, the Insured agrees to pay to Sunbelt a Cancellation Charge of five dollars ($5.00) in the case of consumer insurance premium finance and ($15.00) in the case of commercial insurance premium finance.

**Contract References:** See the remainder of this document for information about nonpayment, default, acceleration of maturity, and prepayment terms.

The undersigned broker understands and agrees that the provisions on the reverse side hereof are incorporated herein by reference as a part of this agreement.

BROKER SIGNATURE: _____ (SEAL)

DATE: _____        BROKER NO.: _____

AGENCY NAME: __Rankin-Shelton-Hunter, Inc.__

TELEPHONE NUMBER: ( 256 ) 350-7296

AGENCY'S MAILING ADDRESS: __P.O. Box 2927__

CITY __Decatur__        STATE __AL__  ZIP __35602__

# SUNBELT GENERAL AGENCY, INC.
### P.O. BOX 231114  •  MONTGOMERY, ALABAMA 36123-1114

## INSURANCE PREMIUM FINANCE AGREEMENT
### INSURED: *READ BEFORE SIGNING*

THIS AGREEMENT, made, executed and delivered this <u>1st</u> day of <u>March</u> _____, <u>2003</u>, between

NAME <u>CareGivers, Inc.</u>                                    HOME PHONE ( )
(PRINT NAME EXACTLY AS IT APPEARS IN THE POLICY DECLARATIONS)

WORK PHONE <u>(205) 486-2558</u>

MAILING ADDRESS <u>41899 Hwy 195</u>   CITY <u>Haleyville</u>   STATE <u>AL</u>   ZIP <u>35565-7056</u>

SOCIAL SECURITY NUMBER OR TAX IDENTIFICATION NUMBER <u>32-0026132</u>,
hereinafter referred to as Insured, and SUNBELT GENERAL AGENCY, INC., an Alabama corporation, hereinafter referred to as Sunbelt, for the financing of the balance of the premiums on the following policies of personal/consumer insurance:

## POLICIES OF PERSONAL/CONSUMER INSURANCE TO BE FINANCED

| EFFECTIVE DATE | EXPIRATION DATE | NAME AND EXACT ADDRESS OF INSURING COMPANY FOR NOTICE (INCLUDE GENERAL AGENCY AND COMPANY, IF BROKERED) | TYPE OF COVERAGE | POLICY NUMBER | PREMIUM |
|---|---|---|---|---|---|
| 03/1/03 | 3/1/04 | Loyds (Rankin-Shuttleworth) | GL/Prof | | 147,700.00 ÷ 12 = |
| | | CEO CV 103 | | | $ 12,308.33 /Mo |

| TOTAL CASH PRICE (Total Premium), including your down payment of 36,925.00 | AMOUNT FINANCED The amount of credit provided to you or on your behalf | + FINANCE CHARGE The dollar amount the credit will cost you | = TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate |
|---|---|---|---|---|
| $ 147,700.00 | $ 110,775.00 | $ 4,072.00 | $ 114,847.20 | 12.5% |

### YOUR PAYMENT SCHEDULE WILL BE AS FOLLOWS:

| AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | WHEN FIRST PAYMENT IS DUE | WHEN SUBSEQUENT PAYMENTS ARE DUE |
|---|---|---|---|
| $ 19,141.20 | 6 | 4/1/03 | 1st. |

**ATTENTION!!!** Attach form #L-001 if there are any lienholders, mortgages, or certificate holders.

**Itemization of Amount Financed:** One hundred percent of the Amount Financed will be paid to the Insuring Company issuing the policy that is the subject of this Premium Finance Agreement, as that Company is listed above.

**Repayment of Loan:** For and in consideration of Sunbelt's extension of credit to the Insured, and its payment of the premiums listed on this Agreement to the insurance company, their brokers or agents on Insured's behalf; and subject to the terms herein on both the front and back sides of this Agreement, Insured promises to pay Sunbelt, at the address listed at the top of this agreement or as otherwise directed by Sunbelt, the total of payments according to the payment schedule listed above.

**Security:** The Insured hereby assigns to Sunbelt, and grants Sunbelt a security interest in the extent of the total amount payable under this Agreement in, any and all gross unearned premiums in and dividends which may become payable under the listed policy of insurance, as well as any loss payments that may reduce the unearned premiums (subject to any mortgage or loss payee interests). Insured further agrees that Sunbelt may retain any funds that an

insurance carrier issuing the listed policy of insurance does not require to maintain the Insured's policy in force.

**Prepayment:** It is agreed that Insured has the right to prepay the total outstanding Amount Financed owed to Sunbelt at any time. If Insured pays the Amount Financed to Sunbelt before it is due, moreover, Sunbelt agrees to refund to Insured the unearned Finance Charge (as determined by using the Rule of 78s), subject to a nonrefundable charge of $15.00, although no refund of less than one dollar ($1.00) will be made.

**Late Charge:** If a payment is delinquent for five (5) or more days, the Insured agrees to pay to Sunbelt a Late Charge amounting to 5 per centum (5%) of the delinquent amount, or one dollar and fifty cents ($1.50), whichever amount is greater, but subject to a maximum of five dollars ($5.00).

**Cancellation Charge:** If a payment is delinquent for fifteen (15) or more days, and if said delinquency results in cancellation of the listed policy of insurance, the Insured agrees to pay to Sunbelt a Cancellation Charge of five dollars ($5.00) in the case of consumer insurance premium finance and ($15.00) in the case of commercial insurance premium finance.

**Contract-Reference:** See the remainder of this document for information about nonpayment, default, acceleration of maturity, and prepayment terms.

**NOTICE TO INSURED:** (1) Read both sides of this agreement before signing -- both sides contain important terms of this agreement, including a provision requiring arbitration of all disputes arising hereunder and a corresponding waiver of rights to trial by jury. (2) Do not sign this agreement if it contains blank spaces *(but see "Policy Not Yet Issued" on the reverse side).* (3) You are entitled to a copy of this agreement at the time you sign it. (4) Keep your copy of the agreement to protect your legal rights. (5) This agreement is not legally binding upon SUNBELT until duly accepted *(see "ACCEPTANCE" on the reverse side).*

By signing this agreement, Insured agrees to all terms and conditions listed herein on both sides of this agreement, and acknowledges that Insured has received a true and complete copy thereof.

INSURED: X _____ (SEAL)   DATE: _____

INSURED: _____ (SEAL)   DATE: _____

The undersigned broker understands and agrees that the provisions on the reverse side hereof are incorporated herein by reference as a part of this agreement.

BROKER SIGNATURE: _____ (SEAL)

DATE: _____   BROKER NO.: _____

AGENCY NAME: <u>Rankin-Shelton-Hunter, Inc.</u>

TELEPHONE NUMBER: (<u>256</u>) <u>350-7296</u>

AGENCY'S MAILING ADDRESS: <u>P.O. Box 2927</u>

CITY <u>Decatur</u>   STATE <u>Al</u>   ZIP <u>35602</u>

# Exhibit F



# RANKIN-SHUTTLEWORTH
*Insurance & Risk Management*

July 9, 2007

Hunter Carroll
Stockham, Carroll & Smith, P.C.
2204 Lakeshore Drive
Suite 114
Birmingham, AL 35209

Dear Hunter,

As you know, I retired from Rankin-Shelton-Hunter, Inc. four months ago. Edd Balch came to me last week to review files and coverage for Consult-America as it relates to coverage for an old claim, Shelby Jean Stockman.

Coverages:

| | | |
|---|---|---|
| Oct. 5 2000-2001 | $75,000 deductible | Bayport Indemnity |
| Oct. 5 2001-2002 | $75,000 deductible | Bayport Indemnity |
| Oct. 5 2002- 2003 | $25,000 deductible | Bayport Indemnity |
| Oct. 5 2003- now | | Healthcare Indemnity |

Mrs. Stockman was a resident from 10/30/00 to 04/03/01. She died 04/10/01 and suit was filed 04/02/03. Obviously all events occurred during Bayport Indemnity policies and the claim was "made" during the $25,000 deductible year.

In recent correspondence, Bayport Indemnity has agreed to one interpretation of this and we apologize for any misunderstandings. They have too! It was not a question of coverage, but of deductible. Please inform Gene Church promptly that the company will work with you and pay this claim above the deductible. Mr. Church is relieved of having to pay settlement so he can work to settle with your firm.

Thank you,

Rex Rankin, III

cc: Edd Balch

P.O. Box 1132  •  Decatur, AL 35602
Office 256.260.0412 • Fax 256.355.3070 • www.rscapcon.com

| Atlanta, Georgia | Decatur, Alabama | Grand Turk, Turks and Caicos Islan |
|---|---|---|
| U.S.A. | U.S.A. | British West Indies |

# Exhibit G

# RANKIN-SHUTTLEWORTH
*Insurance & Risk Management*

August 9, 2007

EXHIBIT #11

Hunter Carroll
2204 Lakeshore Dr.
Suite 114
Birmingham, AL 35209

Dear Hunter,

Enclosed is the settlement check you requested on the Wallace v. Carbon Hill case. We will be awaiting the release papers.

Thank you,

*Jana Sweatmon*

Jana Sweatmon



BAYPORT CORPORATION, LTD.
P.O. BOX 1182
DECATUR, AL 35602
256-260-0412

05/05

1848

PAY
TO THE
ORDER OF  Ann Wallace and her attorney Nolen Ives, Jr.

Thirty thousand & 00/100

DATE  8-9-07

$ 30,000.00

DOLLARS

RENASANT
BANK

FOR

⑆000 ₁8₁8⑈ ⑆0 8₁ 20 ₁ 2 7 4 ⑆: 6 ₁ 1 1 0 ₁8 ₁ 50 ⑈

# Exhibit H



# TURKS AND CAICOS BANKING COMPANY LIMITED

Page 1 of 1

## ACCOUNT STATEMENT

FROM: 01/02/2008   TO: 29/02/2008

Grand Turk
P.O. Box 123, Duke Street
Grand Turk
Turks and Caicos Islands
Telephone: (649) 946-2368

Providenciales
P.O. Box 777, Caribbean Place
Providenciales
Turks and Caicos Islands
Telephone: (649) 941-4994

Email: services@tcbc.tc
Internet: www.tcbc.tc

207700     Water Treatment Industry Ass.
c/o PricewaterhouseCoopers
P.O. Box 63
Providenciales
T & C Islands

Customer Demand Deposits
U.S.Dollars

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| | Balance Brought Forward as at: 01/02/2008 | | | 1,234,225.51 |
| 01/02/2008 | Income On ( 3000.00 ) Verizon Communications Inc. \| From Depository 102500001 | | 903.00 | 1,235,128.51 |
| 08/02/2008 | Transfer to Imprest account | 250,000.00 | | 985,128.51 |
| 15/02/2008 | Reference :N/A Wire transfer from Watercolor Managment Inc. | | 116,570.31 | 1,101,698.82 |
| 15/02/2008 | Reference :N/A Wire transfer from Fee - 50.00 Watercolor Managment Inc. | 50.00 | | 1,101,648.82 |
| 20/02/2008 | Income On ( 2600.00 ) Caterpillar Inc. \| From Depository 102500001 | | 655.20 | 1,102,304.02 |
| 29/02/2008 | Money Market UJ0G8GE2D Matured | | 50,000.00 | 1,152,304.02 |
| 29/02/2008 | Money Market UJ0G8GE2D Matured | | 109.38 | 1,152,413.40 |
| 29/02/2008 | Add To - 1FKEJ1OH5 | 50,000.00 | | 1,102,413.40 |
| 29/02/2008 | Reference :N/A Wire transfer from Watercolor Management Inc. | | 113,156.16 | 1,215,569.56 |
| 29/02/2008 | Reference :N/A Wire transfer from Fee - 50.00 Watercolor Management Inc. | 50.00 | | 1,215,519.56 |
| 29/02/2008 | Transfer to imprest account | 100,000.00 | | 1,115,519.56 |
| 29/02/2008 | DDA Interest to Mar 01, 2008 at 1.25% | | 1,114.10 | 1,116,633.66 |
| | Balance Carried Forward as at: 29/02/2008 | | | 1,116,633.66 |

RECEIVED

MAR 19 2008

Disclaimer: This statement of account shall be deemed conclusive if not objected to within 30 days.



# TURKS AND CAICOS BANKING COMPANY LIMITED

Page 1 of 1

### ACCOUNT STATEMENT
FROM: 01/02/2008   TO: 29/02/2008

Grand Turk
P.O. Box 123, Duke Street
Grand Turk
Turks and Caicos Islands
Telephone: (649) 946-2368

Providenciales
P.O. Box 777, Caribbean Place
Providenciales
Turks and Caicos Islands
Telephone: (649) 941-4994

Email: services@tcbc.tc
Internet: www.tcbc.tc

207800    Water Treatment Industry Ass.
c/o PricewaterhouseCoopers
P.O. Box 63
Providenciales
Turks & Caicos Islands

Customer Demand Deposits
U.S.Dollars

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| | Balance Brought Forward as at: 01/02/2008 | | | 56,559.69 |
| 01/02/2008 | Draft to Chq#00004980 - Carol Brooks | 100.00 | | 56,459.69 |
| 01/02/2008 | Draft to Fee - 5.00 Chq#00004980 - Carol Brooks | 5.00 | | 56,454.69 |
| 01/02/2008 | Draft to #4257 Federal Reserve Bank | 4,000.00 | | 52,454.69 |
| 01/02/2008 | Draft to Fee - 15.00 #4257 Federal Reserve Bank | 15.00 | | 52,439.69 |
| 04/02/2008 | U0003080204 Comerica Bank, Costa Mesa - Adorno, Yoss, Alvarado & Smith Wire transfer to | 23,403.20 | | 29,036.49 |
| 04/02/2008 | U0003080204 Comerica Bank, Costa Mesa - Adorno, Yoss, Alvarado & Smith Wire transfer to Fee - 75.00 | 75.00 | | 28,961.49 |
| 08/02/2008 | U0013080208 Wachovia Bank - Roberts, Reynolds, Bedard & Tuzzio, P.A. Wire transfer to | 4,899.25 | | 24,062.24 |
| 08/02/2008 | U0013080208 Wachovia Bank - Roberts, Reynolds, Bedard & Tuzzio, P.A. Wire transfer to Fee - 50.00 | 50.00 | | 24,012.24 |
| 08/02/2008 | U0014080208 TD Banknorth, Bridgeport - Zeldes, Needle & Cooper, P.C. Trust Account Wire transfer to | 162,500.00 | | (138,487.76) |
| 08/02/2008 | U0014080208 TD Banknorth, Bridgeport - Zeldes, Needle & Cooper, P.C. Trust Account Wire transfer to Fee - 150.00 | 150.00 | | (138,637.76) |
| 08/02/2008 | Dft#4264 - Donegal Insurance Companies | 27,500.00 | | (166,137.76) |
| 08/02/2008 | Charges / Incl. Fedex - Dft#4264 - Donegal Insurance Companies | 80.00 | | (166,217.76) |
| 08/02/2008 | Remittance by capital account | | 250,000.00 | 83,782.24 |
| 22/02/2008 | U000308022 Renasant Bank, Tupelo - Rankin-Shuttleworth Inc. Wire transfer to | 60,000.00 | | 23,782.24 |
| 22/02/2008 | U000308022 Renasant Bank, Tupelo - Rankin-Shuttleworth Inc. Wire transfer to Fee - 100.00 | 100.00 | | 23,682.24 |
| 28/02/2008 | U0015080228 Provident Bank, Denville - Louis S. Sceusi, Esq Wire transfer to | 35,000.00 | | (11,317.76) |
| 28/02/2008 | U0015080228 Provident Bank, Denville - Louis S. Sceusi, Esq Wire transfer to Fee - 100.00 | 100.00 | | (11,417.76) |
| 29/02/2008 | Feb. fax charges | 15.00 | | (11,432.76) |
| 29/02/2008 | Remittance by capital account | | 100,000.00 | 88,567.24 |
| | Balance Carried Forward as at: 29/02/2008 | | | 88,567.24 |

Disclaimer: This statement of account shall be deemed conclusive if not objected to within 30 days.



# TURKS AND CAICOS BANKING COMPANY LIMITED

Page 1 of 1

## ACCOUNT STATEMENT

FROM: 01/02/2008    TO:29/02/2008

Grand Turk
P.O. Box 123, Duke Street
Grand Turk
Turks and Caicos Islands
Telephone: (649) 946-2368

207700    Water Treatment Industry Ass.
c/o PricewaterhouseCoopers
P.O. Box 63
Providenciales
T & C Islands

Customer Demand Deposits
Australian Dollars

Providenciales
P.O. Box 777, Caribbean Place
Providenciales
Turks and Caicos Islands
Telephone: (649) 941-4994

Email: services@tcbc.tc
Internet: www.tcbc.tc

|  |  | Debit | Credit | Balance |
|---|---|---|---|---|
| Balance Brought Forward as at: 01/02/2008 |  |  |  | 939.22 |
| 07/02/2008 | Money Market VA58VCXXH Matured |  | 61,000.00 | 61,939.22 |
| 07/02/2008 | Money Market VA58VCXXH Matured |  | 71.17 | 62,010.39 |
| 07/02/2008 | Add To - 86QL9NTYF | 62,000.00 |  | 10.39 |
| 14/02/2008 | Money Market 86QL9NTYF Matured |  | 62,000.00 | 62,010.39 |
| 14/02/2008 | Money Market 86QL9NTYF Matured |  | 72.33 | 62,082.72 |
| 14/02/2008 | Add To - ISNC48R18 | 62,000.00 |  | 82.72 |
| 21/02/2008 | Money Market ISNC48R18 Matured |  | 62,000.00 | 62,082.72 |
| 21/02/2008 | Money Market ISNC48R18 Matured |  | 72.33 | 62,155.06 |
| 21/02/2008 | Add To - VLBOBSEYW | 62,000.00 |  | 155.06 |
| 23/02/2008 | Income On ( 650000.00 ) Citigroup Inc. | - From Depository 100900000 |  | 19,500.00 | 19,655.06 |
| 28/02/2008 | Money Market VLBOBSEYW Matured |  | 62,000.00 | 81,655.06 |
| 28/02/2008 | Money Market VLBOBSEYW Matured |  | 73.84 | 81,728.90 |
| 28/02/2008 | Add To - 4719SY7RU | 62,000.00 |  | 19,728.90 |
| 29/02/2008 | DDA Interest to Mar 01, 2008 at 0.75% |  | 2.98 | 19,731.88 |
| Balance Carried Forward as at: 29/02/2008 |  |  |  | 19,731.88 |



RECEIVED

MAR 19 2008

Disclaimer: This statement of account shall be deemed conclusive if not objected to within 30 days.



# TURKS AND CAICOS BANKING COMPANY LIMITED

Page 1 of 1

### ACCOUNT STATEMENT
FROM: 01/02/2008   TO:29/02/2008

Grand Turk
P.O. Box 123, Duke Street
Grand Turk
Turks and Caicos Islands
Telephone: (649) 946-2368

Providenciales
P.O. Box 777, Caribbean Place
Providenciales
Turks and Caicos Islands
Telephone: (649) 941-4994

Email: services@tcbc.tc
Internet: www.tcbc.tc

```
336400     Bayport Corporation

hold all mail



Customer Demand Deposits
U.S.Dollars
```

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| | Balance Brought Forward as at: 01/02/2008 | | | 1,698.08 |
| 01/02/2008 | Jan 08 loan interest/Rex Rankin | 6,324.29 | | (4,626.21) |
| 01/02/2008 | 12 - Money Market XWIFWBGBG Broken | | 420,000.00 | 415,373.79 |
| 01/02/2008 | 18 - Money Market XWIFWBGBG Broken Maturity Interest | | 32.08 | 415,405.87 |
| 01/02/2008 | Add To - BN6BLLBE0 | 415,000.00 | | 405.87 |
| 07/02/2008 | Money Market XWIFWBGBG Matured | | 420,000.00 | 420,405.87 |
| 07/02/2008 | Money Market XWIFWBGBG Matured | | 224.58 | 420,630.45 |
| 07/02/2008 | 2 - Money Market XWIFWBGBG Broken | 420,000.00 | | 630.45 |
| 07/02/2008 | 8 - Money Market XWIFWBGBG Broken | 224.58 | | 405.87 |
| 08/02/2008 | Money Market BN6BLLBE0 Matured | | 415,000.00 | 415,405.87 |
| 08/02/2008 | Money Market BN6BLLBE0 Matured | | 201.74 | 415,607.61 |
| 08/02/2008 | Add To - 0UTP87X7O | 415,000.00 | | 607.61 |
| 15/02/2008 | Money Market 0UTP87X7O Matured | | 415,000.00 | 415,607.61 |
| 15/02/2008 | Money Market 0UTP87X7O Matured | | 201.74 | 415,809.34 |
| 15/02/2008 | Add To - HK2W5VJFQ | 415,000.00 | | 809.34 |
| 22/02/2008 | Money Market HK2W5VJFQ Matured | | 415,000.00 | 415,809.34 |
| 22/02/2008 | Money Market HK2W5VJFQ Matured | | 201.74 | 416,011.08 |
| 22/02/2008 | Chq#10276 - Liquitech, Inc. - Fifth Third Bank | | 1,125.00 | 417,136.08 |
| 22/02/2008 | Chq#10275 - Liquitech, Inc. - Fifth Third Bank | | 703.15 | 417,839.23 |
| 22/02/2008 | Chq#10278 - Liquitech, Inc. - Fifth Third Bank | | 281.25 | 418,120.48 |
| 22/02/2008 | Chq#10279 - Liquitech, Inc. - Fifth Third Bank | | 281.25 | 418,401.73 |
| 22/02/2008 | Chq#10277 - Liquitech, Inc. - Fifth Third Bank | | 562.50 | 418,964.23 |
| 22/02/2008 | Add To - CM1G2HMF3 | 415,000.00 | | 3,964.23 |
| 29/02/2008 | Money Market CM1G2HMF3 Matured | | 415,000.00 | 418,964.23 |
| 29/02/2008 | Money Market CM1G2HMF3 Matured | | 201.74 | 419,165.96 |
| 29/02/2008 | Add To - KJU456EKH | 415,000.00 | | 4,165.96 |
| 29/02/2008 | Feb. fax charges | 5.00 | | 4,160.96 |
| | Balance Carried Forward as at: 29/02/2008 | | | 4,160.96 |

Disclaimer: This statement of account shall be deemed conclusive if not objected to within 30 days.



# TURKS AND CAICOS BANKING COMPANY LIMITED

Page 1 of 1

## ACCOUNT STATEMENT
### FROM: 01/02/2008   TO: 29/02/2008

Grand Turk
P.O. Box 123, Duke Street
Grand Turk
Turks and Caicos Islands
Telephone: (649) 946-2368

Providenciales
P.O. Box 777, Caribbean Place
Providenciales
Turks and Caicos Islands
Telephone: (649) 941-4994

Email: services@tcbc.tc
Internet: www.tcbc.tc

---

331700    RSH, Inc.

hold all mail




Customer Demand Deposits
U.S.Dollars

| | Debit | Credit | Balance |
|---|---|---|---|
| Balance Brought Forward as at: 01/02/2008 | | | 2,885.68 |
| 01/02/2008   Income On ( 850.00 ) Bank of New York Co Inc }  From Depository 102500001 | | 142.80 | 3,028.48 |
| 29/02/2008   Feb. fax charges | 5.00 | | 3,023.48 |
| Balance Carried Forward as at:  29/02/2008 | | | 3,023.48 |

RECEIVED

MAR 19 2008

Disclaimer: This statement of account shall be deemed conclusive if not objected to within 30 days.



# TURKS AND CAICOS BANKING COMPANY LIMITED

Page 1 of 1

## ACCOUNT STATEMENT
FROM: 01/02/2008   TO: 29/02/2008

Grand Turk
P.O. Box 123, Duke Street
Grand Turk
Turks and Caicos Islands
Telephone: (649) 946-2368

Providenciales
P.O. Box 777, Caribbean Place
Providenciales
Turks and Caicos Islands
Telephone: (649) 941-4994

Email: services@tcbc.tc
Internet: www.tcbc.tc

806800     Rex Rankin III

Loans & Advances
U.S.Dollars

| | | Debit | Credit | Balance |
|---|---|---|---|---|
| Balance Brought Forward as at: 01/02/2008 | | | | (1,056,724.29) |
| 01/02/2008 | rem by Bayport Corp | | 6,324.29 | (1,050,400.00) |
| 29/02/2008 | Loan Interest to Mar 01, 2008 at 6% | 5,076.94 | | (1,055,476.94) |
| Balance Carried Forward as at: 29/02/2008 | | | | (1,055,476.94) |

Disclaimer: This statement of account shall be deemed conclusive if not objected to within 30 days.

# Exhibit I



STATE OF ALABAMA        )

COUNTY OF MADISON       )

**CORRECTIVE ASSIGNMENT OF MORTGAGES AND ASSIGNMENT OF RENTS**

[NOTE: This Assignment is executed and recorded to correct of record a Mortgage Book and
Page Number incorrectly stated on the originally executed and recorded Assignment]

FOR VALUE RECEIVED, REGIONS BANK ("Assignor") does hereby grant, bargain, sell,
convey, assign, and deliver without recourse to BAYPORT CORPORATION, LTD., ("Assignee"),
its successors and assigns that certain Construction Mortgage and Assignment of Rents executed by
Charles Douglas Gooch, Jr. and Patricia S. Gooch ("Mortgagor"), and delivered to Assignor, which
were recorded in the Office of the Judge of Probate of Madison County, Alabama in Mortgage Book
2680, Page 436, and Mortgage Book 2680, Page 443, respectively, together with all indebtedness
secured thereby and all interest of the undersigned in and to the lands and property conveyed by said
mortgage and assignment of rents; and that certain Construction Mortgage and Assignment of Rents
executed by Gooch's Market, LLC ("Mortgagor") and delivered to Assignor, which were recorded
in the Office of the Judge of Probate of Madison County, Alabama, in Mortgage Book 2680, Page
417, (and modified by Mortgage Modification Agreement dated March 19, 2001, and recorded
March 21, 2001, in Mortgage Book 2770, Page 927, in the Office of the Judge of Probate of Madison
County, Alabama), and Mortgage Book 2680, Page 424, respectively, together with all indebtedness
secured thereby and all interest of the undersigned in and to the lands and property conveyed by said
mortgage and assignment of rents.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its officer
thereunto duly authorized on or as of the ____ day of October, 2007.

REGIONS BANK

Harry Waugh
By: _____
Its: _____

STATE OF ALABAMA        )
COUNTY OF MADISON       )

I, the undersigned Notary Public in and for said County and State, hereby certify
that ____ Harry Waugh ____, whose name as Sr. Vice President of
Regions Bank, is signed to the foregoing instrument and who is known to me, acknowledged before
me on this day, that being informed of the contents of said instrument, he, as such officer and with
full authority, executed the same voluntarily for and as the act of said Regions Bank

Given under my hand and seal this 4th day of October, 2007.

_____
Notary Public   Maryanne Robbins
My Commission Expires: 4-24-2010

This instrument prepared by:
Chad W. Ayres
Wilmer & Lee, P.A.
100 Washington Street, Suite 200
Huntsville, AL 35801

# Exhibit J

04/18/2008   09:34   2555331317                    WILMER LEE                      PAGE  02/05

EXHIBIT
H

STATE OF ALABAMA    )
COUNTY OF MADISON )

## ASSIGNMENT OF LOAN DOCUMENTS

THIS ASSIGNMENT OF LOAN DOCUMENTS is made and entered into on this 22 day of April, 2008, by and between BAYPORT CORPORATION, LTD. (herein referred to as "Assignor"), and WATERCOLOR MANAGEMENT, INC. (herein referred to as "Assignee").

### WITNESSETH:

FOR AND IN CONSIDERATION of the sum of Ten and no/100 Dollars ($10.00) cash and other good and valuable consideration this day in hand paid to Assignor by Assignee, the receipt and sufficiency of which is hereby expressly acknowledged by Assignor and by Assignee, Assignor has this day assigned, conveyed, delivered, sold, set-over and transferred, and does, by these presents, assign, convey, deliver, sell, set-over and transfer, unto Assignee, its successors and assigns, (a) without recourse, in law or in equity or otherwise, by Assignee or any other person, firm or entity, against or on Assignor, and (b) without representation or warranty, express or implied or otherwise, of any kind whatsoever, by Assignor to Assignee or any other person, firm or entity, all of Assignor's right, title and interest in and to the following documents which are cumulatively referred to as the "Loan Documents," all of which were assigned to Assignor herein on November 12, 2004:

1. Promissory Note dated July 10, 2000, by and between Gooch's Market, LLC, as Borrower, and Regions Bank, as Lender, in the original principal amount of Three Hundred Seventy-Five Thousand and no/100 Dollars ($375,000.00) (the "Note");

2. First Renewal Promissory Note dated October 10, 2000, by and between Gooch's Market, LLC, as Borrower, and Regions Bank, as Lender, in the original principal amount of Four Hundred Five Thousand and no/100 Dollars ($405,000.00) (the "First Renewal Note");

3. Second Renewal Note dated December 15, 2000, by and between Gooch's Market, LLC, as Borrower, and Regions Bank, as Lender, in the original principal amount of Four Hundred Five Thousand and no/100 Dollars ($405,000.00) (the "Second Renewal Note");

4. U.S. Small Business Administration Note dated March 19, 2001, by and between Gooch's Market, LLC, as Borrower, and Regions Bank, as Lender, in the original principal amount of Four Hundred Five Thousand and no/100 Dollars ($405,000.00) (the "SBA Note");

5. Construction Mortgage dated July 10, 2000, by and between Gooch's Market, LLC, as Mortgagor, and Regions Bank, as Mortgagee, in the original principal amount of $375,000.00 and filed for record July 10, 2000, in Mortgage Book 2680, Page 417, Probate Records of Madison County, Alabama (the "Slaughter Road Mortgage");

6. Assignment of Rents dated July 10, 2000, by and between Gooch's Market, LLC, as Grantor, and Regions Bank, as Lender, filed for record July 10, 2000, in Mortgage Book 2680, Page 424, Probate Records of Madison County, Alabama (the "Slaughter Road Assignment");

7. Construction Mortgage dated July 10, 2000, by and between Charles Douglas Gooch, Jr. and Patricia S. Gooch, as Mortgagor, and Regions Bank, as Mortgagee, in the original principal amount of $234,000.00 and filed for record July 10, 2000, in Mortgage Book 2680, Page 436, Probate Records of Madison County, Alabama (the "Schrimsher Road Mortgage");

8. Assignment of Rents dated July 10, 2000, by and between Charles Douglas Gooch, Jr. and Patricia S. Gooch, as Grantors, and Regions Bank, as Lender, filed for record July 10, 2000, in Mortgage Book 2680, Page 443, Probate Records of Madison County, Alabama (the "Schrimsher Road Assignment");

9. Construction Mortgage dated July 10, 2000, by and between Charles D. Gooch and Mary Louise Gooch, as Mortgagors and Regions Bank, as Mortgagee, in the

04/18/2008 09:34 2555331317 WILMER LEE PAGE 83/85

original principal amount of $118,000.00 and filed for record July 14, 2000 in Fiche 2000-340 at Frame 03, Probate Records of Lauderdale County, Alabama (the "Lauderdale County Mortgage"), a

10. Assignment of Rents dated July 10, 2000, by and between Charles D. Gooch and Mary Louise Gooch, as Grantors, and Regions Bank, as Lender, filed for record July 14, 2000, in Fiche 2000-340 at Frame 10, Probate Records of Lauderdale County, Alabama (the "Lauderdale County Assignment");

11. Commercial Security Agreement dated July 10, 2000 by and between Gooch's Market, LLC, as Grantor and Regions Bank, as Lender, with regard to collateral therein described, given as additional security for the Note, the First Renewal Note, the Second Renewal Note, and the SBA Note;

12. Uniform Commercial Code Financing Statement, Form UCC-1 ALA, given as additional security for the Slaughter Road Mortgage, recorded July 10, 2000, as document number 2000-01993, Probate Records of Madison County;

13. Uniform Commercial Code Financing Statement, Form UCC-1 ALA, recorded July 12, 2000, as document number 2000-27934, office of the Secretary of State for the State of Alabama;

14. Unconditional Guarantee by and between Charles Douglas Gooch, as Guarantor, and Regions Bank, as Lender, dated March 19, 2001 regarding amounts owing under the SBA Note;

15. Unconditional Guarantee by and between Charles Douglas Gooch, Jr., as Guarantor, and Regions Bank, as Lender, dated March 19, 2001 regarding amounts owing under the SBA Note;

16. Unconditional Guarantee by and between Mary Louise Gooch, as Guarantor, and Regions Bank, as Lender, dated March 19, 2001 regarding amounts owing under the SBA Note;

17. Unconditional Guarantee by and between Patricia Strollo Gooch, as Guarantor, and Regions Bank, as Lender, dated March 19, 2001 regarding amounts owning under the SBA Note;

18. Agreement dated March 19, 2001, by and between Gooch's Market, LLC, as Borrower, Charles Gooch, Jr. and wife, Patricia Strollo Gooch and Charles Douglas Gooch and wife, Mary Louise Gooch, as Mortgagors; and Regions Bank, as Lender, concerning Slaughter Road, Schrimsher Road and Lauderdale County Mortgages remaining in full force and effect as security for the SBA Note, as same was previously assigned to Assignor on November 12, 2004;

19. Mortgage Modification Agreement dated March 19, 2001 by and between Gooch's Market, LLC, as Mortgagor, and Regions Bank, as Mortgagee, increasing the principal indebtedness secured to $405,000.00, and including certain terms required by the Small Business Administration recorded March 21, 2001 in Mortgage Book 2770, Page 927, Probate Records of Madison County, Alabama;

20. Mississippi Valley Title Insurance Policy No. C 852173, and any endorsements thereto;

21. Mississippi Valley Title Insurance Policy No. C 852174, and any endorsements thereto;

22. Mississippi Valley Title Insurance Policy No. C 852178, and any endorsements thereto;

23. Claim of Regions Bank filed August 27, 2004, in the United States Bankruptcy Court for the Northern District of Alabama, Case Number, 04-82857-JAC-7.

together with the indebtedness evidenced and secured thereby, the monies due and to become due thereon, the interest thereon, and the property, real, personal or otherwise, described therein.

Further, in consideration of the aforementioned payment, Assignor and Assignee also agree as follows:

1. Assignor gives no warranty of any kind with this transfer, and expressly disclaims any expressed or implied warranty regarding this transfer. Assignee acknowledges that it has relied on no warranty or representation of Assignor regarding this transaction or the enforceability of the Loan Documents by Assignee.

2. Assignee agrees to indemnify and hold harmless Assignor from any loss, claim or action, relating to this transaction or to enforcement of any of the Loan Documents including, but not limited to attorney's fees of Assignor in defending any such loss, claim or action relating to this assignment or to enforcement of any of the Loan Documents.

3. Assignor shall deliver to Assignee the Note, endorsed "to the order of Watercolor Management, Inc., without recourse," as well as the other originals of the Loan Documents. Assignor shall also execute and deliver to Assignee, if requested, a UCC-3 assignment of its UCC-1 financing statement, and an Assignment of the Real Estate Mortgages, and an Assignment of Security Agreement.

4. This agreement represents the entire agreement of the parties, with all prior discussions and negotiations being merged herein. Should any party seek to enforce its rights under this agreement or seek a declaration or interpretation of this agreement, the prevailing party shall be entitled to recover all costs, including attorney's fees.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns, subject to redemption according to law, and (a) without recourse, in law or in equity or otherwise, by Assignee or any other person, firm or entity, against or on Assignor, and (b) without representation or warranty, express or implied or otherwise, of any kind whatsoever, by Assignor to Assignee or any other person, firm or entity.

Assignor disclaims all liability of an endorser and all warranties, transfer or otherwise.

IN WITNESS WHEREOF, the undersigned have caused these presents to be executed and delivered by its duly authorized officer on this the 22 day of April, 2008.

ASSIGNOR:

BAYPORT CORPORATION, LTD.

By: _____

Its: _____

ASSIGNEE:

WATERCOLOR MANAGEMENT, INC.

By: _____

Its: _____

CERTIFIED COPY OF POWER OF ATTORNEY
BAYPORT CORPORATION
WATER TREATMENT INDUSTRY ASSURANCE COMPANY

Know All Men by These Presents:   That BAYPORT CORPORATION, a British West Indies Company, pursuant to the authority granted in the By-Laws does hereby nominate, constitute and appoint Rex Rankin, III of Decatur, Alabama its true and lawful agent and attorney –in-fact, to make, execute, seal and deliver for and on its behalf any and all corporate transactions outlined in the Articles of Incorporation.

The execution of such undertakings in pursuance of these presents, shall be as binding upon said company, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the company at their administrative offices in Providenciales, B.W.I.

This power is granted until the month of October 2008.


Carol Brooks, Secretary

STATE OF ALABAMA   )
COUNTY OF MORGAN   )

      I, the undersigned, a Notary Public in and for said County in said State, hereby certify that __Rex Rankin, III__ whose name as ____President____ of WaterColor Management , Inc., is signed to the foregoing Assignment of Loan Documents, and who is known to me, acknowledged before me on this day that, being informed of the contents of the Assignment of Loan Documents, he, as such officer, and with full authority, executed the same voluntarily for and as the act of WaterColor Management, Inc.

      Given under my hand this 22nd day of April, 2008.

[Notary Seal]

_Jennifer C. Fronk_
NOTARY PUBLIC
My commission expires 04/07/2012

Page 4 of 4

# Exhibit K

STATE OF ALABAMA          )

COUNTY OF MADISON       )

## ASSIGNMENT OF MORTGAGES AND ASSIGNMENT OF RENTS

FOR VALUE RECEIVED, BAYPORT CORPORATION, LTD. ("Assignor") does hereby grant, bargain, sell, convey, assign, and deliver without recourse to WATERCOLOR MANAGEMENT, INC., ("Assignee"), its successors and assigns, that certain Construction Mortgage and Assignment of Rents executed by Charles Douglas Gooch, Jr. and Patricia S. Gooch ("Mortgagor"), recorded in the Office of the Judge of Probate of Madison County, Alabama in Mortgage Book 2680, Page 436, and Mortgage Book 2680, Page 443, respectively, as previously assigned to Assignor by Regions Bank, together with all indebtedness secured thereby and all interest of the undersigned in and to the lands and property conveyed by said mortgage and assignment of rents; and that certain Construction Mortgage and Assignment of Rents executed by Gooch's Market, LLC ("Mortgagor") which were recorded in the Office of the Judge of Probate of Madison County, Alabama, in Mortgage Book 2680, Page 417, (and modified by Mortgage Modification Agreement dated March 19, 2001, and recorded March 21, 2001, in Mortgage Book 2770, Page 927, in the Office of the Judge of Probate of Madison County, Alabama), and Mortgage Book 2680, Page 424, respectively, as previously assigned to Assignor by Regions Bank, together with all indebtedness secured thereby and all interest of the undersigned in and to the lands and property conveyed by said mortgage and assignment of rents.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its duly authorized agent on or as of the 17th day of April, 2008.

ASSIGNOR:

BAYPORT CORPORATION, LTD.

By: _____

      Rex Rankin III

Its:    Authorized Agent

STATE OF ALABAMA          )

COUNTY OF MADISON       )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Rex Rankin III whose name as agent of Bayport Corporation, Ltd., is signed to the foregoing Assignment of Mortgages and Assignment of Rents, and who is known to me, acknowledged before me on this day that, being informed of the contents of the Assignment of of Mortgages and Assignment of Rents, he, as such agent, and with full authority, executed the same voluntarily for and as the act of Bayport Corporation, Ltd.

Given under my hand this _17_ day of April, 2008.

_____

NOTARY PUBLIC

[Notary Seal]      My commission expires: _05-05-2009_

THIS INSTRUMENT PREPARED BY:
Chad W. Ayres
Wilmer & Lee, P.A.
100 Washington Street, Suite 200
Huntsville, Alabama 35801
(256) 533-1445

# Exhibit L

FILED
2010 Mar-11  AM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | |
|---|---|
| **WATERCOLOR MANAGEMENT, INC.** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.: 08-0998-CLS** |
| **v.** ) | |
| ) | |
| **GOOCH'S MARKET, LLC,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MOTION TO APPROVE EXECUTION, DELIVERY AND RECORDATION OF FORECLOSURE DEEDS AND MOTION FOR FINAL ORDER

COMES NOW Plaintiff, Watercolor Management, Inc., by and through its undersigned counsel, and files this motion stating as follows:

A.     Plaintiff did on Friday, March 5, 2010, cry the foreclosures of the properties which are the subject of this action and did sell said properties to the highest bidder, which was Plaintiff, in accordance with this Court's partial final judgment dated January 25, 2010 (the "Order").

B.     No other person or parties appeared at the foreclosure sale, nor attempted to bid, including any of the named defendants or their respective counsels, although a known foreclosure purchaser, Jackie Munoz, did call on the morning of March 5, 2010, regarding the notice in the newspaper and to inquire

whether the foreclosure was still going to occur that day, and Madison County Assistant District Attorney Donald Rizzardi did witness Plaintiff at the courthouse steps preparing to foreclose and did comment on same.

C.     The Order appears to infer a power to execute the foreclosure deeds, and deliver same for recording, but Plaintiff would prefer an explicit order authorizing such actions to occur.

D.     The bid prices are as set forth on the proposed foreclosure deeds attached hereto as Exhibit "A" and "B," and total $460,000.00.

E.     Giving the Defendants the benefits of any arguments regarding the amount owed to Plaintiff, there is at a minimum the following owed as of the date of foreclosure: (1) $269,250.00 in principal (this does not include adding legal fees, costs and expenses back to the principal as allowed by Section 7(b) of the Promissory Note); (2) $126,853.63 in interest (using the rate set forth in the Promissory Note and charging simple interest only upon the $269,250 stated as minimum principal in subsection (1) hereof); (3) $43,550.53 paid by Plaintiff to Regions Bank for the costs, expenses and legal fees claimed by Regions Bank against borrower, Gooch's Market, LLC (which costs and fees are also not added into the total principal balance used to calculate interest and late fees); (4) $7,041.68 in late fees; (5) $2,740.28 in costs and expenses (and not including any costs or expenses that will have to be paid to redeem one of the properties which

was sold at a previous tax sale); and (6) $19,163.00 in legal fees incurred as of March 8, 2010 for a total minimum current debt owing of $468,599.13.

F.     The total bid prices for the foreclosure and sale of both properties pledged as collateral are less than the minimum total debt owing to Plaintiff and, as such, there is no deficiency balance to be interplead into this Honorable Court, and no amounts for disbursement to the United States Internal Revenue Service, the Alabama Department of Revenue of First Commercial Bank of Huntsville (the "Junior Creditors").

G.     The foreclosure deeds allow for the redemption of the properties sold at the foreclosure sale at the price(s) set forth therein, along with interest and other charges as set forth by the redemption laws of the State of Alabama.

H.     As previously stated, Plaintiff does not wish to pursue any deficiency balance claims against borrower or any guarantors.

I.     Therefore, Plaintiff requests that this Honorable Court enter a Final Order: (1) authorizing Plaintiff to execute the foreclosure deeds attached hereto as Exhibits "A" and "B"; (2) authorizing Plaintiff to file the foreclosure deeds in the Office of the Probate Judge of Madison County; (3) authorizing Plaintiff to file the Order and the Final Order in the Office of the Judge of Probate of Madison County, Alabama so that the general public reviewing the Madison County, Alabama real property records can verify that Plaintiff possessed the right to take

such actions; (4) dismissing any other claims, cross-claims, counter-claims or requests for relief with prejudice; and (5) taking any other further action as the Court deems just and equitable.

WHEREFORE, Plaintiff prays that after consideration of the information set forth herein and the exhibits submitted herewith, as well as such facts and information as have previously been submitted to this Court, the Court will enter an order authorizing Plaintiff to take the actions set forth in paragraph I. of this Motion, that this Honorable Court will file a final order dismissing any other claims, cross-claims, counter-claims or requests for relief with prejudice, and that this Court will take such other and further action as the court deems just and equitable.

SUBMITTED this 11th day of March, 2010.

/s/ Chad W. Ayres
CHAD W. AYRES
Bar No. ASB-0116-A22A
Attorney for Plaintiff
WILMER & LEE, PA
100 Washington St., Ste. 200
P.O. Box 2168
Huntsville, AL 35804-2168
Telephone:  (256) 533-0202
Fax:        (256) 533-1317
Email:      cayres@wilmerlee.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing, and by U.S. Mail, postage prepaid and properly addressed to:

Mr. Richard E. O'Neal, Esq.
Assistant United States Attorney
1801 4th Avenue North
Birmingham, Alabama 35203

Ms. Margaret Johnson McNeill, Esq.
Assistant Attorney General
State of Alabama and Assistant Counsel,
Department of Revenue
P.O. Box 32001
Montgomery, Alabama 36132-0001

Mr. Stuart M. Maples, Esq.
Maples & Ray, PC
401 Holmes Avenue, Suite H
Huntsville, Alabama 35801

Mr. Michael C. Lambert, Esq.
Lambert Law Firm, LLC
112 West Market Street
Athens, Alabama 35611

/s/Chad W. Ayres
**Attorney for Plaintiff**

EXHIBIT "A"

STATE OF ALABAMA      )

COUNTY OF MADISON    )

### MORTGAGE FORECLOSURE DEED

KNOW ALL MEN BY THESE PRESENTS: That CHARLES DOUGLAS GOOCH, JR. and PATRICIA S. GOOCH, did execute and deliver a mortgage to REGIONS BANK, which mortgage is recorded in Mortgage Book 2680, Page 436, in the Office of the Judge of Probate of Madison County, Alabama; and

WHEREAS said mortgage was duly assigned to BAYPORT CORPORATION, LTD. by virtue of that certain Assignment of Mortgages and Assignment of Rents recorded in Document Number 20041130000525210, and that certain Corrective Assignment of Mortgages and Assignment of Rents recorded in Document Number 20071003000702720, both in the Probate Records of Madison County, Alabama; and

WHEREAS, said mortgage was duly transferred and assigned to WATERCOLOR MANAGEMENT, INC. by an Assignment of Mortgages and Assignment of Rents recorded in Document Number 20100201000050480, in the Probate Records of Madison County, Alabama; and

WHEREAS, default was made in the payment of the indebtedness secured by the mortgage and WATERCOLOR MANAGEMENT, INC., did declare all of the indebtedness secured by the mortgage due and payable and did give due and proper notice of the foreclosure of the mortgage, in accordance with the terms of the order (the "Order") of the United States District Court, Northern District of Alabama, Northeastern Division (CV-08-S-998-NE), by publication in the Madison County Record, a newspaper of general circulation published in Madison County, Alabama, in its issues of February 5, 2010, February 12, 2010, February 19, 2010, and February 26, 2010; and

WHEREAS, on March 5, 2010, the day on which the foreclosure sale was due to be held under the terms of said notice, at 11:30 a.m., said foreclosure sale was duly and properly conducted and WATERCOLOR MANAGEMENT, INC. did offer for sale and did sell at public outcry, in front of the north entrance of the Madison County Courthouse, in the City of Huntsville, Alabama, the property hereinafter described (the "Property"); and

WHEREAS, the highest and best bid for cash obtained for the Property was the bid of WATERCOLOR MANAGEMENT, INC. in the amount of $85,000.00 which sum WATERCOLOR MANAGEMENT, INC. offered to credit on the indebtedness secured by said mortgage, and the Property was thereupon sold to WATERCOLOR MANAGEMENT, INC.; and

WHEREAS, the Order authorized the mortgagee thereunder to bid at the foreclosure sale, thereof and to purchase the Property, if the highest bidder therefor;

WHEREAS, by further court order, the undersigned is authorized as the representative of the mortgagee and the auctioneer conducting the foreclosure sale for the mortgagee to execute to the purchaser at the said sale a deed to the property so purchased;

NOW THEREFORE, in consideration of the premises and of a credit of $85,000.00 on the indebtedness secured by the mortgage, CHARLES DOUGLAS GOOCH, JR. and PATRICIA S. GOOCH, acting by and through WATERCOLOR MANAGEMENT, INC. by CHAD W. AYRES as the auctioneer and the person conducting the foreclosure sale for WATERCOLOR MANAGEMENT, INC. and WATERCOLOR MANAGEMENT, INC. by CHAD W. AYRES as the auctioneer and the person conducting the foreclosure sale for WATERCOLOR MANAGEMENT, INC. and CHAD W. AYRES as the auctioneer and the person conducting the foreclosure sale for WATERCOLOR MANAGEMENT, INC. do hereby grant, bargain, sell and convey unto WATERCOLOR MANAGEMENT, INC. the following described real estate situated in Madison County, Alabama:

All that part of the East half of the Northwest Quarter of the Northwest Quarter of Section 2, Township 4 South, Range 2 West of the Huntsville Meridian, Madison County, Alabama, more particularly described as beginning at a 3/8" rebar at or near the Southwest corner of the East half of the Northwest Quarter of the Northwest Quarter of said Section 2, said point being further described as being South 89 degrees 06 minutes 49 seconds East 209.89 feet from a concrete monument found at the Northeast corner of Lot 10, Block 5, of Rainbow Gap Estates as recorded in Plat Book 6, on page 78 in the Probate Records of said County;

Thence from the point of beginning, North 01 degree 03 minutes 56 seconds East 679.35 feet to an iron pin found, thence North 01 degree 02 minutes 30 seconds East 309.11 feet to an iron pin found; thence North 01 degree 02 minutes 30 seconds East 354.76 feet to a ½" capped rebar set on the South boundary of Heatherwood Second Addition as recorded in Plat Book 16, on page 16 in the Probate Records of said County; thence North 89 degrees 53 minutes 12 seconds East 598.91 feet to an iron pipe found; thence South 02 degrees 11 minutes 41 seconds West 1170.50 feet to a 1-1/2" rebar found; thence continue South 02 degrees 11 minutes 41 seconds West 181.60 feet to a ½" capped rebar set; thence North 89 degrees 18 minutes 18 seconds West 571.88 feet to the point of beginning, containing 18.103 acres more or less.

LESS AND EXCEPT:

All that part of the East half of the Northwest Quarter of the Northwest Quarter of Section 2, Township 4 South, Range 2 West of the Huntsville Meridian, Madison County, Alabama, more particularly described as beginning at a 3/8" rebar at or near the Southwest corner of the East half of the Northwest Quarter of the Northwest Quarter of said Section 2, said point being further described as being South 89 degrees 06 minutes 49 seconds East 209.89 feet from a concrete monument found at the Northeast corner of Lot 10, Block 5, of Rainbow Gap Estates as recorded in Plat Book 6, on page 78 in the Probate Records of said County;

Thence from the point of beginning North 01 degree 03 minutes 56 seconds East 537.07 feet to a point; thence North 85 degrees 10 minutes 01 second East 216.31 feet to a point; thence South 13 degrees 19 minutes 18 seconds East 208.56 feet; thence South 00 degrees 52 minutes 01 seconds East 252.52 feet; thence North 89 degrees 18 minutes 18 seconds West 257.50 feet to the point of beginning herein.

Together with a 20 foot easement for utilities and drainage and ingress-egress, more particularly described as beginning at a 3/8" rebar found at the Southwest corner of the Northwest Quarter of the Northwest Quarter of Section 2, Township 4 South, Range 2 West, Madison County, Alabama; thence from the point of beginning, South 89 degrees 18 minutes 18 seconds East 275.50 feet; thence North 00 degrees 52 minutes 01 second West 20.00 feet; thence North 89 degrees 18 minutes 18 seconds West 274.83 feet; thence South 01 degree 03 minutes 56 seconds West 20.00 feet to the point of beginning containing 0.126 acres more or less.;

subject, however, to the following:

1. The lien for 2010 ad valorem taxes, a lien not yet due and payable;

2. The statutory rights of redemption on the parts of those entitled to redeem as provided by the laws of the state of Alabama and by order of the court; and

3. All easements, rights of way and restrictions and other matters of record.

TO HAVE AND TO HOLD the Property unto WATERCOLOR MANAGEMENT, INC, forever; subject, however, to those exceptions noted above.

IN WITNESS WHEREOF, WATERCOLOR MANAGEMENT, INC. has caused this instrument to be executed by CHAD W. AYRES as auctioneer and the person conducting said sale for WATERCOLOR MANAGEMENT, INC. and in witness whereof he has executed this instrument in his capacity as such auctioneer on this the _____ day of _____, 2010.

CHARLES DOUGLAS GOOCH, JR. and PATRICIA S. GOOCH, Mortgagor

By WATERCOLOR MANAGEMENT, INC. , Mortgagee

By_____
as Auctioneer and the person
conducting said sale for
Mortgagee

WATERCOLOR MANAGEMENT, INC. , Mortgagee

By_____
as Auctioneer and the person
conducting said sale for
Mortgagee

By:_____
as Auctioneer and the person
conducting said sale for the
Mortgagee

STATE OF ALABAMA          )

COUNTY OF MADISON         )

I, the undersigned Notary Public in and for said County and State, hereby certify that CHAD W. AYRES, whose name as Auctioneer and the person conducting said sale for WATERCOLOR MANAGEMENT, INC., is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that, being informed of the contents of the conveyance, he, in his capacity as said Auctioneer and the person conducting said sale for WATERCOLOR MANAGEMENT, INC., and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this the ___ day of _____, 2010.

NOTARY PUBLIC
My Commission Expires:_____

THIS INSTRUMENT PREPARED BY: Chad. W. Ayres, WILMER & LEE, P.A., 100 Washington Street, Suite 200, (P. O. Box 2168), Huntsville, Alabama 35801 (35804), 256-533-0202

EXHIBIT "B"

STATE OF ALABAMA        )

COUNTY OF MADISON       )

<u>MORTGAGE FORECLOSURE DEED</u>

KNOW ALL MEN BY THESE PRESENTS: That GOOCH'S MARKET, LLC, did execute and deliver a mortgage to REGIONS BANK, which mortgage is recorded in Mortgage Book 2680, Page 417, in the Office of the Judge of Probate of Madison County, Alabama; and

WHEREAS said mortgage was duly assigned to BAYPORT CORPORATION, LTD. by virtue of that certain Assignment of Mortgages and Assignment of Rents recorded in Document Number 20041130000525210, and that certain Corrective Assignment of Mortgages and Assignment of Rents recorded in Document Number 20071003000702720, both in the Probate Records of Madison County, Alabama; and

WHEREAS, said mortgage was duly transferred and assigned to WATERCOLOR MANAGEMENT, INC. by an Assignment of Mortgages and Assignment of Rents recorded in Document Number 20100201000050480, in the Probate Records of Madison County, Alabama; and

WHEREAS, default was made in the payment of the indebtedness secured by the mortgage and WATERCOLOR MANAGEMENT, INC., did declare all of the indebtedness secured by the mortgage due and payable and did give due and proper notice of the foreclosure of the mortgage, in accordance with the terms of the order (the "Order") of the United States District Court, Northern District of Alabama, Northeastern Division (CV-08-S-998-NE), by publication in the <u>Madison County Record</u>, a newspaper of general circulation published in Madison County, Alabama, in its issues of February 5, 2010, February 12, 2010, February 19, 2010, and February 26, 2010; and

WHEREAS, on March 5, 2010, the day on which the foreclosure sale was due to be held under the terms of said notice, at 11:30 a.m., said foreclosure sale was duly and properly conducted and WATERCOLOR MANAGEMENT, INC. did offer for sale and did sell at public outcry, in front of the north entrance of the Madison County Courthouse, in the City of Huntsville, Alabama, the property hereinafter described (the "Property"); and

WHEREAS, the highest and best bid for cash obtained for the Property was the bid of WATERCOLOR MANAGEMENT, INC. in the amount of $375,000.00 which sum WATERCOLOR MANAGEMENT, INC. offered to credit on the indebtedness secured by said mortgage, and the Property was thereupon sold to WATERCOLOR MANAGEMENT, INC.; and

WHEREAS, the Order authorized the mortgagee thereunder to bid at the foreclosure sale thereof and to purchase the Property, if the highest bidder therefor;

WHEREAS, by further court order, the undersigned is authorized as the representative of the mortgagee and the auctioneer conducting the foreclosure sale for the mortgagee to execute to the purchaser at the said sale a deed to the property so purchased;

NOW THEREFORE, in consideration of the premises and of a credit of $375,000.00 on the indebtedness secured by the mortgage, GOOCH'S MARKET, LLC, acting by and through WATERCOLOR MANAGEMENT, INC, by CHAD W. AYRES as the auctioneer and the person conducting the foreclosure sale for WATERCOLOR MANAGEMENT, INC. and WATERCOLOR MANAGEMENT, INC. by CHAD W. AYRES as the auctioneer and the person conducting the foreclosure sale for WATERCOLOR MANAGEMENT, INC. and CHAD W. AYRES as the auctioneer and the person conducting the foreclosure sale for WATERCOLOR MANAGEMENT, INC. do hereby grant, bargain, sell and convey unto WATERCOLOR MANAGEMENT, INC. the following described real estate situated in Madison County, Alabama:

All that part of the Southwest Quarter of Section 11, Township 4 South, Range 2 West, particularly described as beginning at a point on the West margin of Anderson Road, 25.0 feet from the Center Line as measured at right angles, said

point being South 0 degrees 45 minutes West 925.2 feet, South 24 degrees West 800.0 feet and South 14 degrees 20 minutes East 209.0 feet from the center of the East boundary of the Northwest Quarter of said Section 11, thence South 75 degrees 35 minutes West 315.0 feet; thence South 14 degrees 20 minutes East 210.0 feet; thence North 75 degrees 35 minutes East 315.0 feet to a point on the West margin of Anderson Road; thence along the West margin of Anderson Road North 14 degrees 20 minutes West 210.0 feet to the point of beginning and containing 1.50 acres more or less.

subject, however, to the following:

1. The lien for 2010 ad valorem taxes, a lien not yet due and payable;

2. Ad valorem tax for prior years and any sales related thereto;

3. The statutory rights of redemption on the parts of those entitled to redeem as provided by the laws of the state of Alabama and by order of the court; and

4. All easements, rights of way and restrictions and other matters of record.

TO HAVE AND TO HOLD the Property unto WATERCOLOR MANAGEMENT, INC. forever; subject, however, to those exceptions noted above.

IN WITNESS WHEREOF, WATERCOLOR MANAGEMENT, INC. has caused this instrument to be executed by CHAD W. AYRES as auctioneer and the person conducting said sale for WATERCOLOR MANAGEMENT, INC. and in witness whereof he has executed this instrument in his capacity as such auctioneer on this the _____ day of _____ 2010.

GOOCH'S MARKET, LLC, Mortgagor

By WATERCOLOR MANAGEMENT, INC. , Mortgagee

By_____
as Auctioneer and the person
conducting said sale for
Mortgagee

WATERCOLOR MANAGEMENT, INC. , Mortgagee

By_____
as Auctioneer and the person
conducting said sale for
Mortgagee

By:_____
as Auctioneer and the person
conducting said sale for the
Mortgagee

STATE OF ALABAMA    )

COUNTY OF MADISON    )

    I, the undersigned Notary Public in and for said County and State, hereby certify that CHAD W. AYRES, whose name as Auctioneer and the person conducting said sale for WATERCOLOR MANAGEMENT, INC., is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that, being informed of the contents of the conveyance, he, in his capacity as said Auctioneer and the person conducting said sale for WATERCOLOR MANAGEMENT, INC., and with full authority, executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal, this the ___ day of _____, 2010.


_____

NOTARY PUBLIC
My Commission Expires:_____

THIS INSTRUMENT PREPARED BY: Chad. W. Ayres, WILMER & LEE, P.A., 100 Washington Street, Suite 200, (P. O. Box 2168), Huntsville, Alabama 35801 (35804), 256-533-0202

STATE OF ALABAMA     )

COUNTY OF MADISON    )



2010020100566460 1/1 $29.75
Madison Cnty Judge of Probate,AL
02/01/2010 10:29:07AM FILED/CERT

## ASSIGNMENT OF MORTGAGES AND ASSIGNMENT OF RENTS

FOR VALUE RECEIVED, BAYPORT CORPORATION, LTD. ("Assignor") does hereby grant, bargain, sell, convey, assign, and deliver without recourse to WATERCOLOR MANAGEMENT, INC., ("Assignee"), its successors and assigns, that certain Construction Mortgage and Assignment of Rents executed by Charles Douglas Gooch, Jr. and Patricia S. Gooch ("Mortgagor"), recorded in the Office of the Judge of Probate of Madison County, Alabama in Mortgage Book 2680, Page 436, and Mortgage Book 2680, Page 443, respectively, as previously assigned to Assignor by Regions Bank, together with all indebtedness secured thereby and all interest of the undersigned in and to the lands and property conveyed by said mortgage and assignment of rents; and that certain Construction Mortgage and Assignment of Rents executed by Gooch's Market, LLC ("Mortgagor") which were recorded in the Office of the Judge of Probate of Madison County, Alabama, in Mortgage Book 2680, Page 417, (and modified by Mortgage Modification Agreement dated March 19, 2001, and recorded March 21, 2001, in Mortgage Book 2770, Page 927, in the Office of the Judge of Probate of Madison County, Alabama), and Mortgage Book 2680, Page 424, respectively, as previously assigned to Assignor by Regions Bank, together with all indebtedness secured thereby and all interest of the undersigned in and to the lands and property conveyed by said mortgage and assignment of rents.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its duly authorized agent on or as of the 17th day of April, 2008.

ASSIGNOR:

BAYPORT CORPORATION, LTD.

By: _____

     Rex Rankin III

Its:    Authorized Agent

STATE OF ALABAMA     )

COUNTY OF MADISON    )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Rex Rankin III whose name as agent of Bayport Corporation, Ltd., is signed to the foregoing Assignment of Mortgages and Assignment of Rents, and who is known to me, acknowledged before me on this day that, being informed of the contents of the Assignment of of Mortgages and Assignment of Rents, he, as such agent, and with full authority, executed the same voluntarily for and as the act of Bayport Corporation, Ltd.

Given under my hand this _17_ day of April, 2008.

_____

NOTARY PUBLIC

[Notary Seal]      My commission expires: _05-05-2009_

THIS INSTRUMENT PREPARED BY:
Chad W. Ayres
Wilmer & Lee, P.A.
100 Washington Street, Suite 200
Huntsville, Alabama 35801
(256) 533-1445