**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

CONSULTAMERICA, INC.,
et al.,

      PLAINTIFFS,

v.                              CASE NO. 5:10-CV-1299-IPJ

MARVIN REX RANKIN, III, et al.,

      DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court are defendants Balch, Rankin and WaterColor Management, Inc's motion to dismiss (doc. 8), brief in support of said motion (doc. 9), the plaintiffs' response (doc. 18) and defendants' reply (doc. 25); defendant Rankin-Shelton-Hunter, Inc.'s motion to dismiss (doc. 11), brief in support of said motion (doc. 12), the plaintiffs' response (doc. 19) and defendant's reply (doc. 24); defendant Sunbelt General Agency, Inc.'s motion to dismiss (doc. 13), and brief in support (doc. 14), plaintiffs' response (doc. 23) and defendant's reply (doc. 30); and defendant Bayport Corporation Ltd., and Water Treatment Industry Assurance Co.'s motion to dismiss and brief in support (doc. 31), plaintiffs' response (doc. 32) and defendants' reply (doc. 33).  The court will consider each of these motions in turn.

## FACTUAL BACKGROUND COMMON TO ALL MOTIONS

According to the allegations of the Complaint, defendant WaterColor Management, Inc. ("WMI") is controlled by defendant Rankin.[1]  Complaint, ¶ 13. Defendants Rankin and Balch are alleged to be employees and principals of Rankin-Shelton-Hunter, Inc. ("Rankin-Shelton"), which operates an insurance agency. Complaint, ¶ 11. The plaintiffs allege plaintiff ConsultAmerica, Inc. ("Consult America") began purchasing insurance for the nursing homes it owns and operates through Rankin-Shelton, and specifically through defendant Balch as an insurance agent, in 1994. *Id.*, ¶¶ 19-20, 22.

Due to rising costs, in 2000, the plaintiffs sought new insurance coverage for nursing homes which they own, operate and manage.  Complaint, ¶¶ 18, 20, 23. Defendant Balch informed plaintiffs he could obtain coverage through an "offshore" insurance company, that the premiums would increase and the umbrella coverage would not be maintainable in its present form.  Complaint, ¶ 23.  In the summer of 2000, defendant Balch informed plaintiffs that virtually no insurers would provide insurance policies for nursing homes, but defendant Rankin knew of an "offshore" insurer, Bayport Indemnity, Ltd., who would provide coverage.  *Id.*,  ¶¶ 23, 25.

---

[1]In plaintiffs' response to defendants Bayport Corporation LTD and Water Treatment Industry Assurance Co.'s motion to dismiss, the plaintiffs allege Rankin was "the mastermind of the alleged criminal enterprise."  (Doc. 32, at 8).

Although the premiums would be more expensive, they could be paid monthly rather than in a lump sum, and that such financing could be arranged through defendant Sunbelt. *Id*., ¶ 24.

Plaintiffs believed they purchased this insurance coverage beginning in 2000. Complaint, ¶ 27. Plaintiffs now assert that no such insurer exists and that defendant Rankin converted the money paid for coverage to his own use. *Id*., ¶¶ 26, 28-29. Plaintiffs further allege that Sunbelt knew that "Loyds/Rankin-Rivers" and "Loyds/Rankin-Shuttlesworth" was a non-existent company, that there was no insurance policy, and that this was all part of a scheme to defraud plaintiffs. *Id.,* ¶¶ 29-30. The plaintiffs state that in 2001 Rankin represented that he had been assigned by Bayport to assist plaintiffs in handling claims made against ConsultAmerica. Id., ¶ 31.

In 2003, plaintiff CareGivers purchased "insurance" from Bayport Indemnity through Rankin-Shelton, although plaintiffs assert that Bayport did not actually sell insurance and that its binders were false and fraudulent. Complaint, ¶ 32.

Both plaintiffs purchased insurance from defendants between 2001-2005. Complaint, ¶ 33. During this time period, if claims were made against either plaintiff, defendant Rankin hired an attorney to arrange for mediation of the case and the claim would be settled. *Id*., ¶ 34. Plaintiffs assert this was to hide the fact that there was

actually no insurance coverage.[2]  *Id.*  Plaintiffs assert that the premium payments from them and other nursing homes ended up in offshore accounts in the Turks and Caicos Islands, as a means to launder the proceeds of the allegedly fraudulent scheme.[3] Complaint, ¶¶ 35-36.

Based on the above facts, the plaintiffs sue for violations of the Racketeer Influences and Corrupt Organizations ("RICO") Act (Count I), and  state law fraud (Count II).

## STANDARD OF REVIEW

In reviewing motions to dismiss, the court must "accept the allegations of the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir.2004); citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003).  See also  *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).  A court should not dismiss a suit on the pleadings alone "unless it appears beyond doubt that the plaintiff can prove no set of facts in support

---

[2]Plaintiffs fail to allege how they were injured if all claims against them during the time in question were amicably resolved.  Plaintiffs do not allege that they left with judgments against them because of the alleged lack of actual insurance.

[3]Plaintiffs cite the court to other litigation for "proof" of money laundering.  *See* Complaint, ¶¶ 37-38.  The other litigation, *WaterColor Management, Inc. v. Gooch's Market, LLC*, 5:08-cv-998-CLS, reflects nothing sinister in its judgment in favor of WaterColor Management and against a variety of individuals.  It does reflect that Bayport Corporation, Ltd., purchased a construction mortgage and assignment of rents on October 4, 2007, from Regions Bank.  Bayport Corporation then assigned its rights to WaterColor Management, Inc.  This does not allege a cause of action or a cause of damages to the plaintiffs in this action.

of his claim." *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.,*  144 F.3d 732, 735 (11th Cir.1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

A motion to dismiss is granted "only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Sonyika*, 394 F.3d at 1338, citing *Spain v. Brown & Williamson Tobacco Corp*., 363 F.3d 1183, 1187 (11th Cir.2004)(*quoting Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). *See also Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994)(stating that the court "must accept as true the facts stated in the complaint and all reasonable inferences therefrom").

## LEGAL ANALYSIS

Diversity is lacking.  The court has jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) due to the allegations of 18 U.S.C. § 1962 (RICO).[4]  Section 1962 (c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

---

[4]Without explanation, the plaintiffs assert this court has jurisdiction pursuant to 28 U.S.C. § 1345 as well as 28 U.S.C. § 1331.  Section 1345 concerns jurisdiction of the district courts when the United States is a plaintiff.  It is inapplicable to the facts before this court.

conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Subsection (d) makes unlawful any person conspiring to violate subsection (c).  18 U.S.C. § 1962(d).

## A.   Motion to Dismiss of Balch, Rankin, and WaterColor Management, Inc. (doc. 8):

Plaintiffs assert that from 2000 until the present, defendants Rankin, Balch, WaterColor and others conspired to participate in a pattern of racketeering activity, in violation of 18 U.S.C. § § 1962(c) and (d), and committed fraud under state law. Defendants allege that the complaint fails to state a claim upon which relief may be granted, fails to allege any injury to the plaintiffs, even if the allegations are true, and is wholly barred by the statute of limitations.

*1. Failure to state a claim upon which relief may be granted:*

The civil RICO provision permits "'[a]ny person injured in his business or property by reason of a violation' of RICO's criminal provisions to recover treble damages and attorney's fees." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183, 117 S.Ct. 1984, 1987 (1997) (*quoting* 18 U.S.C. § 1964(c)).  To prevail on a RICO claim, a plaintiff must prove that a defendant participated in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined to include such predicate acts as mail and wire fraud. 18 U.S.C. § 1961(1).

6

"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.1991), citing *United States v. Downs,* 870 F.2d 613, 615 (11th Cir.1989).  In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989).

The Eleventh Circuit has ruled that:

Because Plaintiffs' section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.*" See also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir.2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)). We have held that pursuant to Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or mis-representations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint). The plaintiff must allege facts with respect to each defendant's participation in the fraud. *Id.* at 1381.

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290-1291(11th Cir.2010).

In *American Dental*, the Court found that "[t]hough the complaint sets out at least six examples of e-mail and letter communications between Defendants and Plaintiffs ... Plaintiffs do not point to a single specific misrepresentation by Defendants regarding how Plaintiffs would be compensated in any of these communications, nor do they allege the manner in which they were misled by the documents, as they are required to do under Rule 9(b)." *Id.*, at 1292. The court finds the same requirements lacking here. The plaintiff has failed to allege some kind of deceptive conduct occurred through the mail or wire in order to plead a RICO violation predicated on mail or wire fraud. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir.2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings). As in *American Dental*, here "Plaintiffs' complaint provides a list of mailings and wires, without ever identifying any actual fraud." *Id.*, at 1292. If specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is "plausible on its face." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974(2007)).

The plaintiffs assert that the "factual allegations describe how these and the other Defendants conspired to 'steal money from nursing home operations in

Alabama, Florida, North Carolina and elsewhere ...' by purportedly selling to the Plaintiffs and others 'insurance' when in fact no insurance was sold."  Plaintiffs' response (doc. 18) at 8.

The complaint alleges solely that there was a conspiracy to get the plaintiffs to purchase insurance that did not actually exist.  Wholly absent from the complaint is any allegation of a pattern of racketeering activity predicated on a scheme to commit acts of mail and wire fraud.  *See e.g. Liquidation Com'n of Banco Intercontinental, S.A. v. Renta,* 530 F.3d 1339, 1355 (11th Cir.2008)("When a RICO claim is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity, in accordance with Fed.R.Civ.P. 9(b)")(citations omitted).  The plaintiffs provide complex lists of dates and dollar amounts for evidence of wire and mail fraud among and between the defendants, but fail to allege anything which plausibly, under *Twombly*, or particularly, under Rule 9(b), would constitute a pattern of racketeering activity predicated on a scheme to commit acts of mail and wire fraud.  *See American Dental*, 605 F.3d at 1293.   No specific misrepresentations in any of the communications plaintiffs referenced, no connection between the alleged misrepresentations and any particular acts of defendants, and no allegations as to how defendants agreed to engage in an illegal scheme to defraud nursing homes appear in the complaint.  Even more glaringly absent from the complaint is any allegation that

the plaintiffs were somehow harmed by the allegedly fraudulent insurance.  As the complaint is written, the only conclusion that can be drawn is that every claim made during the time plaintiffs had this insurance was paid.[5]

Defendants assert that plaintiffs lack standing to bring this action because, even if the allegations of the complaint are taken as true, the plaintiffs have failed to allege any way they were injured by the defendants' actions.[6]  Without an injury, there can be no RICO action.  *See e.g., Bivens Gardens Office Bldg., Inc. v. Barnett Bank, Inc.*, 906 F.2d 1546, 1554-55 (11th Cir.1990)(a RICO action accrues as soon as a plaintiff discovers both the existence and source of his injury and that the injury is part of a pattern).  The court can find no allegation of an injury in the complaint pending before it.

> There is no liability if a RICO violator has not caused injury. *See Bivens Gardens Office Bldg., Inc. v. Barnett Bank*, 906 F.2d 1546, 1550 n. 7 (11th Cir.1990) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). A civil RICO action requires a plaintiff to prove more than "but for" causation of injury; it requires proximate causation. *See Beck v. Prupis*, 162 F.3d 1090, 1095-96 (11th Cir.1998) (citing *Holmes v. Securities Investor Protection*

---

[5]The plaintiffs also fail to allege how they may have discovered this "fraud" or even whether they still have insurance through the various defendant entities.  While the court is quite sure the answer is no, the court should not have to "intuit" relevant facts omitted from the complaint.

[6]The defendants style this argument as a question of standing.  The court is of the opinion that these standing arguments are aptly considered within the realm of Rule 12(b)(6), Fed.R.Civ.Pro., that being failure to state a claim upon which relief may be granted and therefore addresses them here.

*Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)),
cert. granted, 526 U.S. 1158, 119 S.Ct. 2046, 144 L.Ed.2d 213 (1999).
"'[A] factor is a proximate cause if it is a substantial factor in the
sequence of responsible causation.'" *Beck*, 162 F.3d at 1096 (quoting
*Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386,
1399 (11th Cir.1994)); see also *Bivens Gardens Office Bldg. v. Barnett
Banks, Inc.*, 140 F.3d 898, 906 (11th Cir.1998) (injuries must be "the
direct result of the alleged racketeering activity").

*McCaleb,* 200 F.3d at 752 -753. *See also Pelletier v. Zweifel*, 921 F.2d 1465, 1496

(11th Cir.1991)("[plaintiff] has failed to establish that [defendant] committed, or aided

and abetted, even a single act of racketeering which 'injured his business or property'

as required by section 1964(c) as a condition precedent to civil liability.").

The plaintiffs fail to allege that they had claims on the insurance policies

purchased through defendants which were not paid.  They do not allege other

legitimate policies of insurance would have cost less in premiums or would have paid

more in claims, nor do plaintiffs allege any other injury within the realm of

possibility.  *See Pelletier*, 921 F.2d at 1499 ("When a private plaintiff relies on a

violation of the mail or wire fraud statutes as a predicate act for civil RICO, he faces

an additional hurdle ... he must show not only that the mail or wire fraud statutes have

been violated, but also that he has suffered injury as a result of the violation.").

Without such an injury, the plaintiffs fail to state a claim upon which relief may be

granted.

> In civil cases, ... RICO plaintiffs must also satisfy the requirements of
> 18 U.S.C. § 1964(c).  Section 1964(c) states that "[a]ny person injured
> in his business or property by reason of" RICO's substantive provisions
> has the right to "recover threefold the damages he sustains...." 18 U.S.C.
> § 1964(c). Thus, under § 1964(c), civil RICO claimants, such as the
> plaintiffs here, must show (1) the requisite injury to "business or
> property," and (2) that such injury was "by reason of" the substantive
> RICO violation.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1282 -1283 (11th Cir.2006).  *See*

also *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta,* 530 F.3d 1339, 1350

(11th Cir.2008) ("RICO standing is really just a heightened proximate causation

standard, as it requires a claimant to prove that he was injured in his business or

property 'by reason of' the RICO violation.").

In pleading a claim under RICO, the plaintiffs must at least allege some injury

directly caused by the defendants' purported enterprise.  *See Anza v. Ideal Steel

Supply Corp*., 547 U.S. 451, 457-458, 126 S.Ct. 1991, 1996-1997 (2006). Here, after

alleging a complex money laundering scheme among the defendants, the plaintiffs fail

to allege any injury at all.  Although plaintiffs allege no insurance was actually sold

to them (*see e.g.*, plaintiffs' response (doc. 18) at 26), they fail to allege any claim

they made that went unpaid.  Claims paid on policies purchased would be within the

classic definition of insurance.

2.  *Statute of Limitations*

Defendants assert any claim of the plaintiffs is time barred by the statute of limitations for RICO actions, and the shorter time limitation under Alabama law for fraud.  The statute of limitations for civil RICO actions is four years. A civil RICO action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of its injury and that the injury is part of a pattern. *See McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 751 (11th Cir.2000) (plaintiffs must  pursue the civil RICO remedy within four years of the time when they discovered, or reasonably should have discovered, that they are entitled to civil RICO damages for their injury).  In their complaint, the plaintiffs allege at least one of them first purchased insurance from the defendants in 2000.  They further allege that they purchased insurance coverage for 2001-2005.[7]  Complaint, ¶ 33.

Missing from the complaint is any allegation of an event which would start the statute of limitations running.  As written, the complaint fails to state any occurrence which caused the plaintiffs to know they were the victims of the alleged false

---

[7]These dates do not correspond with the listing of "checks representing payments of purported premiums" found in paragraph 47 of the complaint.  That paragraph asserts "defendants did on or about the following dates cause to be placed in the United States mail checks representing payments of purported premiums...." and lists dates beginning September 5, 2000, and ending October 10, 2007.  No allegation that plaintiffs purchased insurance from the defendants through 2007 is in the complaint.  However, there is a "Certificate of Liability Insurance" issued to CareGivers of Pensacola, Inc., which reflects an effective date of February 15, 2008, but an expiration date of February 15, 2007.  Complaint, exhibit B.

insurance scam.  While the plaintiffs go to great lengths to describe a complex, multi-tiered conspiracy to defraud them and launder the financial proceeds therefrom, they fail to allege any harm to the plaintiffs resulting from it.

In the RICO context, "inquiry notice" controls. *Prudential Ins. Co. of America v. United States Gypsum Co.*, 359 F.3d 226, 236-37 (3rd Cir.2004) (rejecting the argument that the statute of limitations for civil RICO claims is triggered only when the injury becomes "actual"); *Takeuchi v. Sakhai*, 227 Fed.Appx. 106, 107 (2nd Cir.2007) (rejecting plaintiffs' "actual injury" argument and holding that the statute of limitations ran from the time plaintiffs were on inquiry notice as to their injuries). Lacking from the plaintiffs' allegations is any event which alerted the plaintiffs to the grand scheme which they now claim exists.  Even taking the complaint as true, the plaintiffs fail to allege how their knowledge as of the time the complaint was filed was any different than in 2000 when they purchased the insurance in question, or why the "scheme" could not have been discovered in 2000, 2001, 2002, 2003, 2004, or 2005.  See *American Dental,* 605 F.3d at 1287 ("[p]laintiffs' substantive RICO allegations "fail to set forth a violation of § 1962(c) that is 'plausible on its face' because they do not raise a right to relief 'above [the] speculative level.' ")(citing *In re Managed Care Litig*., No. 03-21266-CIV, 2009 WL 347795, at *4 (S.D.Fla. Feb. 11, 2009) (*quoting Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974)).

The plaintiffs respond that "the evidence *from the Complaint* proves that the Plaintiffs did not have any actual knowledge of their injuries until after July 9, 2007. Plaintiffs' response (doc. 18), at 18 (emphasis in original).   In support of this allegation, the plaintiffs cite the court to exhibit F to their complaint, which is a July 9, 2007, letter from defendant Rankin to non-party Hunter Carroll.   That letter states that a claim was made on a lawsuit filed April 2, 2003, that there was a misunderstanding concerning the deductible, and that the claim above the deductible will be paid.   Specifically, the letter states:

> Please inform Gene Church promptly that the company will work with you and pay this claim above the deductible.   Mr. Church is relieved of having to pay settlement so he can work to settle with your firm.

Exhibit F to complaint.   Plaintiffs then allege this letter was an act of wire fraud. What they fail to allege is whether or not this claim was paid.   However, in August 2007 a settlement check in the amount of $30,000.00 was sent to Hunter Carroll from Bayport Corporation, Ltd.   Complaint, exhibit G.   Plaintiffs do not allege that this check was fraudulent or worthless.

Similarly, with regard to their state law claim of fraud, the plaintiffs acknowledge that the statute of limitations is two years.   Plaintiffs' response (doc. 18), at 25.   Again wholly lacking is any allegation to plaintiffs' discovery of the fraud.   Although plaintiffs again rely on the July 9, 2007, letter from Rex Rankin to

Hunter Carroll, the plaintiffs offer nothing to establish an event which led them to believe they were the victims of fraud.  They allege no event since 2000 which caused them to inquire as to the legal status of any of the defendants or the veracity of the insurance policies they had been purchasing.  The plaintiffs offer only that "[i]t is completely plausible, indeed probable if not for sure under the facts pled in this case that the individual Defendants acted to conceal Plaintiffs' cause of action for fraud." Plaintiffs' response (doc. 18) at 25.

The entire complaint is comprised of the very sort of conclusory and factually unsupported allegations which fail to meet the pleading standards set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009).[8] These pleadings do not meet the "specificity requirement" of Rule 9(b), Fed.R.Civ.Pro.  Under Rule 9,

> a party must state with particularity the circumstances constituting fraud or mistake." *See also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir.2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)). We have held that pursuant to Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person

---

[8]The plaintiffs refer to defendants' arguments under *Twombly* and *Iqbal* with the statement that the same are but the "regrettable consequences of perhaps well intended opinions by the Supreme Court." Plaintiffs' response (doc. 18) at 2.  The undersigned, being committed to the idea that the Supreme Court states what the law is, finds these cases establish pleading requirements for complainants.  Clearly, the Court's decision in *Iqbal,* two years after *Twombly,* demonstrates the Supreme Court meant what it said in *Twombly,* "regrettable consequences" or not.

responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1380-81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint). The plaintiff must allege facts with respect to each defendant's participation in the fraud. *Id.* at 1381.

*American Dental*, 605 F.3d at 1291.  The Court in *American Dental* continued,

> We have held that a plaintiff must allege that some kind of deceptive conduct occurred in order to plead a RICO violation predicated on mail fraud. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir.2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings). Here, Plaintiffs' complaint provides a list of mailings and wires, without ever identifying any actual fraud. If the specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is "plausible on its face." *See Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

*Id*., at 1292.

Under well established law, Rule 9(b) is satisfied if the Complaint sets forth the following: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel. Clausen v. Laboratory Corp. of America, Inc*., 290 F .3d 1301, 1310 (11th Cir.2002) (citations omitted).   Failure to meet these exacting

standards is grounds for dismissal of a complaint.  *See, e.g., American United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir.2007) (affirming dismissal of fraud claims where plaintiff "presented only general conclusory allegations of fraud ... [that] do not conform to the heightened pleading requirements for fraud claims"); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir.2005) ("Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.").

Rather than meeting this standard, the plaintiffs have pleaded fraud in exceedingly general terms through references to Bayport Corporation's legal status in a foreign country, even though proof of that status would in no way prove that the plaintiffs were duped into buying worthless insurance policies.  The plaintiffs' own exhibits establish that they made claims on these policies and those claims were paid.

Having considered the foregoing, and being of the opinion defendants Balch, Rankin and WaterColor's motion to dismiss is due to be granted (doc. 8), the court shall so rule by separate Order.[9]

## B.  Motion to dismiss of Rankin-Shelton-Hunter, Inc. (doc. 11):

Defendant Rankin-Shelton-Hunter, Inc. ("RSH") is alleged to be an Alabama corporation which operates an insurance agency and employs defendants Rankin and

---

[9]Because the discussed issues are dispositive of the plaintiffs' claims, the court does not reach the further arguments of the defendants.

Balch.  Complaint, ¶ 11.  Plaintiffs also allege that defendant Balch was an insurance agent for and is now owner of RSH, and that RSH marketed "insurance coverage from Bayport Indemnity."  *Id.*, ¶¶ 22, 27.  The plaintiffs claim that "[i]t was an object of the conspiracy to fraudulently represent that Defendant Rankin-Hunter could obtain insurance coverage for nursing homes from an offshore insurer, Bayport Indemnity."  *Id.*, ¶ 42.

### 1. Failure to plead with particularity

RSH asserts plaintiffs have failed to plead their RICO claim with particularity, citing to *American Dental, supra*.  For the reasons set forth in section A of this opinion, the court agrees.

### 2. Failure to allege a RICO injury

Defendant RSH, like the other defendants, points out that the plaintiffs have wholly failed to assert an injury proximately caused by the alleged predicate acts which form the supposed scheme.  The United States Supreme Court has recently considered the requirement of a proximately caused harm in RICO allegations.  The Court stated that RICO requires a "'direct relationship' between the fraud and the harm."  *Hemi Gorup, LLC v. City of New York, N.Y.*, – U.S. – , 130 S.Ct. 983, 991 (2010).  The Court continued that "precedent makes clear, moreover, that 'the compensable injury flowing from a [RICO] violation ... "necessarily is the harm

19

caused by [the] predicate acts.'" [*Anza*], at 457, 126 S.Ct. 1991 (quoting *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985))."

*Hemi Group,* 130 S.Ct. at 991.  The plaintiffs mistake the premium payments they

made for the requirement of harm.  If the plaintiffs were paid on claims made on the

policies, then they were not defrauded of those premium payments.  Thus, the value

of the premium payments they made is not a "compensable injury flowing from a

RICO violation." *Id.*

Defendant RSH notes that because the plaintiffs purchased "claims made"

policies, only claims made during the policy period are compensable.  RSH's brief

(doc. 12), at 5.  Just as plaintiffs fail to allege a previous unpaid claim, there is no

possibility of future injury in the form of unpaid claims on these policies.   In

response, plaintiffs direct the court to pages 26-27 of their response to Balch, Rankin

and WaterColor's motion (doc. 18).  That response no more addressed an injury to the

plaintiffs then the plaintiffs' response to RSH's motion addresses any injury (doc. 19

at 4-5).

### 3.  Lack of proximate cause

Defendant RSH further asserts that the lack of any alleged injury bars

plaintiffs' RICO claims.  Not only must the plaintiffs establish they suffered an injury

proximately caused by the defendants, but those injuries must arise from the predicate

acts, *i.e.*, the 223 claimed instances of mail and wire fraud.  The plaintiffs assert that the object of the conspiracy was to get money from the plaintiffs for   alleged insurance coverage.  Complaint, ¶ 47.  However, the plaintiffs fail to make any allegation as to how they were injured through the defendants' use of the mail or wire for fraudulent purposes.

"The compensable injury flowing from a violation of [§ 1962(c)] 'necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.'"*Anza*, 547 U.S. at 457, 126 S.Ct. at 91(quoting *Sedima,* 473 U.S. at 497.  The plaintiffs fail to allege that they did not receive value for the insurance premiums they paid.  They further fail to allege how they were harmed through the scheme of offshore money laundering they allege occurred.  *See* Complaint, ¶ 49.  In response, the plaintiffs state only "the mail fraud predicate acts directly and proximately caused injuries to the Plaintiffs' business and property." Plaintiffs' response (doc. 19) at 6.  Plaintiffs wholly fail to identify what those injuries might be.

The Eleventh Circuit Court of Appeals has left no room for doubt that merely pleading predicate acts is insufficient to demonstrate an injury.  "A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money.  He must

show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Maiz v. Virani,* 253 F.3d 641, 672 (11th Cir.2001) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1496-97 (11th Cir.1991) (citations omitted)).

4.    *Statute of limitations*

Defendant RSH also argues that any claims the plaintiffs do have are barred by the statute of limitations.  RSH succinctly sets out the following observations:

> First, Plaintiffs specifically allege that Defendants made misrepresentations and illegal wire transfers to facilitate their scheme and conspiracy to defraud Plaintiffs *as early as 2000.*  Second, Plaintiffs ... were aware that insurance was being provided by the offshore insurance company Bayport Indemnity, Ltd., a wholly owned subsidiary of Bayport Limited, Corp., both of which were located in the Turks and Caicos.  Third, the insurance documents issued to Plaintiffs reflect that the policies came from Lloyd's underwriters or from Bayport Indemnity Ins. Co.  Fourth, the Insurance Premium Finance Agreement issued by Sunbelt General Agency, Inc. bears dates as early as 2001, further establishing that the RICO limitations period expired as early as 2005...

RSH brief (doc. 12) at 7-8 (citations omitted).   The plaintiffs have alleged nothing which prevented them from learning of the alleged fraud sooner, or any event which put them on notice of the supposed fraud within the four years prior to the filing of the complaint.  As the court finds the four year RICO statute of limitations bars this action, necessarily the plaintiffs' fraud claims, having a two year statute of limitations, are also barred.  See § 6-2-38(l), *Code of Alabama 1975*, as amended.

In response, the plaintiffs' rely on their arguments made in response to Rankin, Balch and WaterColor's brief.  As the court noted in addressing those arguments, *supra*, the plaintiffs point to no event since 2000 which caused their knowledge of the insurance purchased to change.  Most notably, they do not allege they filed a claim which went unpaid, causing the statute to start running.  Taking the allegations of the plaintiffs' complaint at face value, the court can easily conclude that the plaintiffs have had knowledge of each fact set forth in their complaint since at least 2001.

> ... for more than a century, courts have understood that "[f]raud is deemed to be discovered ... when, in the exercise of reasonable diligence, it could have been discovered." 2 H. Wood, Limitation of Actions § 276b(11), p. 1402 (4th ed.1916); *see id.*, at 1401-1403, and nn. 74-84 (collecting cases and statutes); *see, e.g., Holmberg, supra*, at 397; *Kirby v. Lake Shore & Michigan Southern R. Co.,* 120 U.S. 130, 138, 7 S.Ct. 430, 30 L.Ed. 569 (1887) (The rule "regard[s] the cause of action as having accrued at the time the fraud was or should have been discovered").

*Merck & Co., Inc. v. Reynolds,* – U.S. – , 130 S.Ct. 1784, 1794 (2010).

Having considered the foregoing, the court is of the opinion that defendant RSH's motion to dismiss is due to be granted, and shall so rule by separate Order.

## C.  Motion to Dismiss of Sunbelt General Agency, Inc. (doc. 13):

Defendant Sunbelt General Agency, Inc. ("Sunbelt") recognizes and relies on the extensive pleadings and briefing of its co-defendants and relies on such pleadings. The court thus adopts its rationale as set forth above on those issues as well.

23

Defendant Sunbelt makes the further argument that the meager allegations against it do not meet the pleading requirements for a RICO or fraud action.

In the complaint, defendant Sunbelt is alleged to be an Alabama corporation that operated an insurance premium financing company.  Complaint, ¶ 14.  Sunbelt allegedly financed insurance premiums for plaintiffs.  *Id.*, ¶ 29.  Plaintiffs assert that Sunbelt was required to verify the existence and legitimacy of the insurers,[10] so therefore Sunbelt "knew" that "Loyds" or "Lloyds" was a non-existent company, knew that there were no real insurance policies, and knew that Rankin-Rivers and Rankin-Shuttlesworth were not agents of Lloyds of London.  *Id.*, ¶ 30.

Sunbelt asserts that even if it did exactly what the plaintiffs allege, namely accepted payments from the plaintiffs and sent them to defendant Rankin or one of Rankin's entities, there is no wrongful conduct in Sunbelt's actions.  Sunbelt brief, at 4.  Having considered this argument, the court notes that there is no allegation of some kind of connection between Sunbelt and the other defendants or that Sunbelt is anything but a legitimate business that operates to finance insurance premiums.[11]

---

[10]Sunbelt denies that any such duty actually exists.  Sunbelt brief (doc. 14), at 4.

[11]Perhaps just for such reasons, the Supreme Court pondered that:

In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' " W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984) (quoting *North v. Johnson*, 58

Rather, Sunbelt is alleged to have provided financing to assist plaintiffs in obtaining what plaintiffs claim were worthless insurance policies.

Assuming solely for purposes of this opinion that defendant Sunbelt had a duty to verify the existence and legitimacy of the insurers, and assuming Sunbelt failed in that duty, plaintiffs fail to allege what injury they suffered by Sunbelt's failure to ensure plaintiffs were getting a legitimate policy.[12]   In *Anza*, the Supreme Court instructed that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries. In the instant case, the answer is no." *Id*.,  547 U.S. at 461, 126 S.Ct. at 1998.  Similarly, the answer here is "no" because the plaintiffs fail to allege any injury at all, stemming from Sunbelt's failures or otherwise.[13]

Having considered the foregoing, the court is of the opinion that defendant Sunbelt's motion to dismiss is due to be granted, and shall so rule by separate Order.

_____

Minn. 242, 245, 59 N.W. 1012 (1894)).

*Holmes v. Securities Investor Protection Corp.*,  503 U.S. 258, 266, n.10, 112 S.Ct. 1311, 1317, n.10 (1992).

[12]This argument is akin to plaintiffs arguing Sunbelt had a duty to protect plaintiffs from plaintiffs' own failure to ensure they were getting actual insurance.  Sunbelt notes that plaintiffs criticize it for "providing financing to Plaintiffs for the premium funds" (plaintiffs' response (doc. 23) at 3), but "the providing of premium funds is precisely what Sunbelt is legally authorized to do." Sunbelt's reply (doc. 30) at 3.  As the Court in *Twombly* noted, while the alleged actions could signify an illegal agreement, here there is "an obvious alternative explanation." *Id*., 550 U.S. at 567, 127 S.Ct. at 1972.

[13]Also missing from the complaint is any rationale as to why Sunbelt would assist the other defendants in carrying out such a conspiracy.  No benefit to Sunbelt is suggested.

**D.     Motion to dismiss of Bayport Corporation, LTD., and Water Treatment Industry Assurance Co.** (doc. 31):

Both of these defendants, like the others, assert that the complaint fails to state a claim upon which relief may be granted against either of them.  Because the court has considered most of these defendants' arguments in the context of the other motions to dismiss, and finds the above rationale applicable to this motion as well, the court does not rehash the above analysis here.  However, the court does find that several aspects of these defendants' motion should be considered in depth.

*1.  Lack of requisite injury*

These defendants argue that the plaintiffs:

> have pled no facts establishing how [Bayport Corporation, LTD] BCL or [Water Treatment Assurance Company] WTIA used the mail or wires or alleged money laundering to *target* and *defraud* them in a substantial enough way.  Even assuming BCL or WTIA participated in the alleged mail or wire fraud and money laundering scheme, the plaintiffs were not injured by reason of that scheme.  Plaintiffs received the benefit of their bargain – all of the benefits of insurance coverage.

BCL and WTIA motion to dismiss (doc. 31) at 5-6 (emphasis in original).  The Supreme Court quoted the Seventh Circuit as stating, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, **nor is the defendant liable to those who have not been injured.**" *Sedima,* 473 U.S. at 496-497, 105 S.Ct. at 3285 (quoting *Haroco, Inc. v. American*

26

*National Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437)(emphasis added).

In other words, in order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to private plaintiffs, the plaintiffs must show that the defendants engaged in the claimed predicate acts and that those acts were the proximate cause of the plaintiffs' injuries. "Plaintiffs must show a direct relation between the injury asserted and the injurious conduct alleged." *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1307 (11th Cir.2003); *see also Williams*, 465 F.3d at 1287-88 ("when a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries .... [I]n RICO cases there must be some direct relation between the injury alleged and the injurious conduct in order to show proximate cause.") (internal citations and quotation marks omitted).

Here, the predicate acts alleged by the plaintiffs post-date the plaintiffs' purchase of "insurance" from the defendants. Taking the allegations of the complaint as true, the plaintiffs purchased fraudulent insurance policies from one or more defendants. Thereafter, the defendants transferred the proceeds of these policies between themselves, until the funds landed in a Turks and Caicos' bank account. Plaintiffs' reliance on conduct after their purchase of insurance cannot satisfy the

"direct relation" standard for proximate cause in relation to a RICO claim.  *See e.g,*
*Boatwright v. Carney Realty, Inc.*, 2009 WL 3615048 *9 (S.D.Ala.2009) ("reliance
on post-[dating] conduct is inadequate as a matter of law to satisfy the 'direct
relation' standard for proximate causation for their RICO cause of action.").[14]  *See*
*also Beck v. Prupis*, 162 F.3d 1090, 1098 (11th Cir.1998) ("A civil RICO conspiracy
claim requires a showing of the existence of a conspiracy, and the commission of an
overt act in furtherance of the conspiracy that causes injury to the plaintiff."); *Brooks*
*v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-81 (11th Cir.1997)
(requiring plaintiffs allege, *inter alia,* the content and manner in which the plaintiffs
were misled by defendants' statements).

        In other words, plaintiffs fail to explain how they were misled into purchasing
allegedly worthless insurance policies by conduct which occurred after that purchase.
Private litigants can recover for racketeering injuries under 18 U.S.C. § 1964(c), but
their injury must "flow from the commission of the predicate acts."  *Pelletier*, 921
F.2d at 1497 (quoting *Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285).

> This means that a private plaintiff who wants to recover under civil
> RICO must show some injury flowing from one or more predicate acts. A
> plaintiff cannot allege merely that an act of racketeering occurred and
> that he lost money.  He must show a causal connection between his

---

[14]Unlike here, in *Boatwright,* the plaintiffs managed to allege that but-for the defendants'
scheme, they would not have purchased the real estate in question.  *Boatwright,* 2009 WL 3615048
*10.  In other words, they alleged an injury.

injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act.

*Pelletier*, 921 F.2d at 1497.

  *2. Rankins' alter-egos*

With regard to to BCL and WTIA,

  Plaintiffs have alleged that they were owned and controlled by Defendant Rankin, the mastermind of the alleged criminal enterprise. The alleged fraud upon the Plaintiffs was straight up.  These Defendants were used by Rankin to facilitate and launder the proceeds of his fraud.... the decisions, acts and conduct of these corporate Defendants were the decisions, acts and conduct of Defendant Rankin.

Plaintiffs' response (doc. 32) at 8-9.  As the court understands this argument, the plaintiffs are not alleging that BCL or WTIA had any direct contact with the plaintiffs, but were merely alter-egos of Rankin used by him to further his wrongdoing, as part of the alleged pattern of racketeering activity.  As the court has already found no allegation by the plaintiffs of an injury caused by defendant Rankin himself, the court is unable to find any injury to the plaintiffs by the alter-egos of Rankin for activity conducted after the plaintiffs' purchase of the allegedly fraudulent insurance.

  In consideration of the foregoing, the court finds defendants BCL and WTIA's motion to dismiss is due to be granted, and shall so rule by separate Order.

## CONCLUSION

Having considered all of the foregoing, and the pleadings filed to date, the court is of the opinion that the plaintiffs have failed to state a claim upon which relief can be granted.  As the Supreme Court stated, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).  Similarly, the plaintiffs here have failed to state a plausible claim under RICO or a plausible claim for fraud.  As such, the court shall grant the pending motions to dismiss (docs. 8, 11, 13, and 31) by separate Order.

**DONE** and **ORDERED** this the 20th day of January, 2011.

_____

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE