## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

CONSULTAMERICA, INC.,
et al.,

      PLAINTIFFS,

v.                       CASE NO. 5:10-CV-1299-IPJ

MARVIN REX RANKIN, III, et al.,

      DEFENDANTS.

## <u>ORDER</u>

Pending before the court is the plaintiffs' motion for relief from January 20, 2011, Order of Dismissal and for leave to file amended complaint (doc. 46), and the defendants' response in opposition to plaintiffs' motion (doc. 48). Having considered said motion, response, the relevant law, and the pleadings filed to date in this action, the court finds as follows:

The court originally granted the defendants' motions to dismiss the plaintiff's complaint in January 2011 because the complaint failed to state a claim upon which relief could be granted, the complaint failed to meet the minimum pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974(2007)), the complaint failed to allege any injury to the plaintiffs proximately caused by the defendants, and because the plaintiffs' claims were barred by relevant statutes of limitations. Because the plaintiffs' failed to state any viable claims, the

court therefore granted the defendants' various motions to dismiss, and dismissed the action without prejudice on January 20, 2011.

The plaintiffs filed an amended complaint on February 18, 2011. Because no motion to permit such a pleading to be filed in a closed case, or to reopen the case, accompanied the plaintiffs' amended complaint, the court granted the defendants' motion to strike the amended complaint on March 8, 2011, without considering the complaint on its merits. The plaintiffs have now filed the current motion for leave to file their amended complaint (doc. 46). In their current motion, the plaintiffs state:

> The basis for Plaintiffs' motion for leave to amend is that the law governing the effect of the court's dismissal of Plaintiffs' complaint without prejudice is not wholly clear, *see* Moore's Federal Practice ¶ 110.13[1] (2nd ed. 1992), and leave to amend should be freely given under Rule 15(a)(2) where justice so requires.

Plaintiff's motion, at 2. The plaintiffs then state that because the court dismissed their complaint without prejudice, they believed that the court's Order was not final for purposes of appeal and that they would therefore have the opportunity to submit an amended complaint.[1] Plaintiff's motion at 3. Hence, the plaintiffs continue that:

> Although a dismissal without prejudice can be appealed as a final order, *Liberty Nat. Inc. Holding Co. v. Charter Co.*, 734 F.2d 545, 553, fn 18 (11th Cir.1984), counsel for Plaintiffs did not believe the Court's January

---

[1] Given plaintiffs' confusion regarding whether the January 20, 2011, Memorandum Opinion and Order were appealable, the court questions why plaintiffs did not either file a motion for clarification, or a request for permission to file an interlocutory appeal under 28 U.S.C. § 1292(b).

20, 2001 (sic) order of dismissal was intended as a final decision because it did not state that no amendment would be allowed, and the court's order was based on the pleadings standards set out in Bell *Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); see *Grayson v. K Mart Corp*., 79 F.3d 1086, 1094 (11th Cir.1996). Counsel for Plaintiffs thus believed, based on their perceived inference from the court's order, that an amended complaint was the appropriate and most efficient procedure to address the pleading deficiencies in Plaintiffs' original complaint.

Plaintiffs' motion, at 4.

Assuming the court allowed the case to be reopened and the amended complaint filed, the allegations contained therein still fail to meet any minimum pleading standards necessary to pursue a RICO claim.[2] In their proposed amendment, the plaintiffs still allege that they paid millions of dollars for insurance coverage which did not actually exist, although they fail to even allege claims submitted to their allegedly non-existent insurer was not paid in full.[3]   Rather, according to plaintiffs, this payment in full was part of the ongoing conspiracy.  The plaintiffs also fail to allege that their insurance premiums exceeded the coverage paid, or assert any

---

[2] Although plaintiff's allegations are more akin to a state law fraud claim, clearly any claim for fraud is long since time barred. Assumably recognizing this, the plaintiffs have dropped their fraud claim from the proposed amended complaint.

[3] In fact, the only injury the plaintiffs allege is the cost of the premiums paid over the time in question.

other financial harm from this allegedly non-existent coverage which paid all of their

claims.[4]

To avoid the statute of limitations issues the court set forth in its Memorandum

Opinion and Order of January 20, 2011, the plaintiffs allege that

> It was not until July or August 2007 that Gene Church began to learn
> that the ConsultAmerica Group and Caregivers may have been victims
> of Defendants' fraudulent enterprise.  From 2003 until June, 2007,
> Church and Rankin had served with one another as directors of an
> offshore captive insurer, Healthcare Indemnity, Ltd., which was
> comprised of fourteen Alabama nursing homes, including the Consult
> America Group and Caregivers in Florida.  Following the annual
> meeting of the captive insurer in Point Clear, Alabama in June 2007,
> another director of the captive, Sterling Shuttleworth, had a conversation
> with Church which touched on the insurance coverage Church's nursing
> homes had been provided by Rankin, Balch, and Rankin-Shelton.
> Church told Shuttleworth that these persons had provided the
> ConsultAmerica Group and Caregivers with insurance coverage through
> Bayport Indemnity, Ltd., a Turks and Caicos insurer which Rankin
> controlled through Bayport Corporation.  Although Shuttleworth was
> involved in an insurance management business with Rankin in the Turks
> and Caicos Islands named Bayport Insurance Managers. Ltd. at that

---

[4]RICO requires a plaintiff to have suffered an injury, "by reason of" the substantive RICO violation.  See e.g., *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1282-1283 (11th Cir.2006). A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money.  He must show a causal connection between his injury and a predicate act. "If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Maiz v. Virani*, 253 F.3d 641, 672 (11th Cir.2001) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1496-97 (11th Cir.1991) (citations omitted)); see also *Williams*, 465 F.3d at 1287-88 ("when a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries .... [I]n RICO cases there must be some direct relation between the injury alleged and the injurious conduct in order to show proximate cause.") (internal citations and quotation marks omitted). As the court pointed out in its Memorandum Opinion of January 20, 2011, and unremedied by the proposed amended complaint, the plaintiffs here wholly fail to allege any injury from the alleged RICO violations.

time, he was not aware of any insurer named Bayport Indemnity and he
so informed Church....

Amended complaint, ¶ 83.

Thus, according to the plaintiffs, at least plaintiff Church and defendant Marvin

Rankin served on a board together, with Sterling Shuttleworth.  No particular event

occurred in 2007 which caused plaintiff Church to inquire into the legitimacy of the

insurance he had been purchasing for the previous seven (7) years.  In fact, the exact

same inquiry could have been made in 2003, 2004, 2005, and/or 2006.  Similarly,

glaringly absent from the plaintiff's original and proposed amended complaints is any

hint at when plaintiffs first made a claim on the allegedly bogus insurance policies.

They do not assert how many claims they made which were fraudulently paid, how

often they had claims, or how much in claims they made.  Rather, they assert that all

their claims were mediated to hide the fact that no insurance existed.[5]  Surely by the

second, or third, or fifth, or tenth mediated claim, the plaintiffs should have been on

notice of the alleged fraud.  Instead, the plaintiffs claim ignorance until a passing

conversation with someone at a board meeting for a board on which they had both

---

[5]As the court noted in dismissing their complaint, the plaintiffs fail to allege how they were
injured if all claims against them during the time in question were amicably resolved.  Plaintiffs
do not allege that they were left with judgments against them because of the alleged lack of
actual insurance.

5

served for years.  Plaintiff Church's negligence in inquiring into the legitimacy of his own insurer does not magically extend the statute of limitations.

Leave to amend is "not an automatic right." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir.2008) (citing Fed.R.Civ.P. 15(a) (2006); *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir.1982). While amendments are freely allowed when justice so requires, sometimes justice requires the opposite result.  Rule 15(a) gives a district court "extensive discretion" to decide whether or not to allow a party to amend a complaint. *Hargett v. Valley Federal Sav. Bank*, 60 F.3d 754, 761 (11th Cir.1995).  This liberal discretion is not abused when the amendment would prejudice the defendant, follows undue delays, or is futile. *Technical Resource Services, Inc. v. Dornier Medical Systems*, *Inc.*, 134 F.3d 1458, 1463-64 (11th Cir.1998); see also *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Because of the statute of limitations bar, any amendment at this late date clearly would be futile.[6]

Turning from the merits of allowing an amended complaint, the court next considers the arguments of the defendants, namely that the plaintiffs failed to follow proper procedure in arriving at the present posture of the case.  The defendants are

---

[6]A plaintiff "should not be allowed to amend [his] complaint without showing how the complaint could be amended to save the meritless claim."*U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1362 (11th Cir.2006) citing *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir.1999).

correct that the plaintiff has known since July 2010 that the defendants were challenging their claims pursuant to Rule 12(b)(6), Fed.R.Civ.Pro. The plaintiffs could have, but failed, to request permission to amend prior to this case being transferred to and ruled upon by the undersigned judge. Upon entry of the ruling, the court having dismissed the plaintiffs' complaint without prejudice, the clerk's office then closed the case, as there was nothing left pending. The plaintiffs are correct that, at that point, their filing of an amended complaint in a closed case was improper.

The plaintiff thus brought this motion, pursuant to Rule 60(b)(1), Fed.R.Civ.Pro., which provides for relief from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect." *Id.* The plaintiffs claim that the February 18, 2011, amended complaint, which the court ruled stricken, was filed by "inadvertent procedural mistake" because they did not "first request[] leave to amend." Plaintiff's motion, at 2. Having thus brought their motion pursuant to Rule 60(b)(1), which does in fact, require a final judgment to have been entered, the plaintiffs next assert that plaintiffs' counsel "believe the court's order was not a final order for purposes of appeal, and that Plaintiffs would have an opportunity to submit an amended complaint." Plaintiff's motion, at 2.

Assuming the court's Order of January 20, 2011, was indeed non-final, the court will not allow the amended complaint now proposed for the reasons set forth

above.  However, following the plaintiffs' argument that the court's Order of January 20, 2011, was indeed final for purposes of a motion under Rule 60(b)(1), the court has given such an argument due consideration.

In order to be entitled to relief from judgment under Rule 60(b)(1), there must be a final judgment.  The plaintiffs rely on *United States ex rel. Atkins v. Minter*, 470 F.3d 1350 (11th Cir. 2006) to support their argument that the plaintiff may seek leave to amend post-judgment.  Although plaintiffs bring their motion pursuant to Rule 60(b)(1), *United States ex rel Atkins* stated "[post judgment, the plaintiff may seek leave to amend if he is granted relief under Rule 59(e) or Rule 60(b)(6)." *Id.*, at 1361, n. 22.  Obviously, a motion under Rule 59(e) would now be untimely.  And for reasons unknown, the plaintiffs opted not to style their motion for relief pursuant to Rule 60(b)(6).

In the very next sentence, the plaintiffs continue:

> ... Plaintiffs seek to be relieved from the court's January 20, 2011 order, as on its face the order was not a final judgment from which an appeal would unmistakenly lie.  Counsel's mistake was excusable given the particular facts of this case.  Moreover, the Court's earlier "dismissal without prejudice is not an adjudication on the merits and thus does not have res judicata effect."  *Hughes v. Lott*, 305 F.3d 1157, 1161 (11th Cir.2003).  Accordingly, Plaintiffs could reassert their claims a new, separate action.  Out of respect for the court, however, Plaintiffs bring this motion to allow the Court to exercise its judgment.

Plaintiff's motion, at 5. In essence, plaintiffs' counsel pleads mistake of law. Such a mistake has been held not to be within the definition of "excusable neglect" in this Circuit. *See e.g., Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir.1997) ("attorney's misunderstanding of the plain language of a [court] rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline"); *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir.1993) (concluding that the district court did not abuse its discretion in denying the plaintiff's motion where counsel's interpretation of Fed. R. Civ. P 6(e) was contrary to case law).

In order to obtain Rule 60 relief due to attorney mistake, the plaintiffs must show both: (1) that the mistake was excusable, and (2) that the plaintiffs "probably would have been successful" on the merits. *Solaroll Shade and Shutter v. Bio-Energy Systems*, 803 F.2d 1130, 1133 (11th Cir.1986). In the context of determining whether a mistake is excusable, the Eleventh Circuit Court of Appeals has observed that "attorney negligence or oversight is rarely grounds for relief." *United States v. Real Property & Residence*, 920 F.2d 788, 792 (11th Cir.1991). Similarly, "inadvertence, ignorance of the [law], or mistakes construing the [law] do not usually constitute excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 391, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Even if this court considers

9

the plaintiffs' motion favorably on the issue of attorney mistake, the plaintiffs are unable to meet the second prong of the inquiry, that they "probably would have been successful" on the merits. *Solarol Shade*, 803 at 1133.   For the reasons set forth above, the court is unable to find that the plaintiffs "probably would have been successful" on the merits.[7]

Even more egregiously, knowing their complaint was being challenged for failure to state a claim, the plaintiffs stood by and waited to see what would happen rather than proactively consider their complaint and whether an amendment would be appropriate to address the defendants' motions.   The Eleventh Circuit has previously set forth exactly what is improper about the very posture the plaintiffs have created before this court:

> A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court....
>
> This new rule is more efficient and in line with the critically important concept of finality in our judicial system. *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 112 (1st Cir.1991)....It also is in line with the general rule of this Circuit that issues not raised before the district court will not be considered on appeal. *See Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir.2001). In addition, it satisfies the apparent purpose of the Federal Rules of Civil Procedure, which is "to secure the

---

[7] Specifically, the court finds that the proposed amended complaint still fails to set forth a claim that could survive a Rule 12 (b)(6) motion to dismiss.

just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.

Under the *Bank* rule, a plaintiff could sit idly by as he awaited the district court's determination with respect to a Rule 12(b)(6) motion to dismiss; he need not seek leave to amend his complaint nor amend it as of right, because he would have "two bites at the apple" on appeal. *See, e.g., Bank*, 928 F.2d at 1113. As in this case, the plaintiff could appeal the adverse ruling of the district court as long as it was a final judgment. *Briehler v. City of Miami*, 926 F.2d 1001, 1002 (11th Cir.1991) (per curiam) (discussing when an order dismissing a complaint is final and appealable). If we reversed the district court, the plaintiff's appeal was successful. His appeal, however, also was successful if we affirmed the district court, because we would then remand the case to the district court and instruct the court to permit the plaintiff to amend his complaint. *See, e.g., Bank*, 928 F.2d at 1113.

*Wagner v. Daewoo Heavy Industries America Corp.* 314 F.3d 541, 542 -543 (11th Cir.2002).

Having considered all of the foregoing, and being of the opinion the plaintiffs' motion for relief from judgment is due to be denied;

It is therefore **ORDERED** by the court that the plaintiffs' motion be and hereby is **DENIED**.

**DONE** and **ORDERED** this the 13th day of April, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

11